UNITED STATES, Appellee,

v.

James M. KEOHANE,
Defendant, Appellant.

No. 90–1029.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1990.

Decided Nov. 5, 1990.

Barbara A.H. Smith, Boston, Mass., with whom Quinlan, Dee & Smith, Boston, Mass., was on brief, for defendant, appellant.

Alexandra Leake, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Circuit Judge, TIMBERS,* Senior Circuit Judge, and CYR, Circuit Judge.

TIMBERS, Circuit Judge:

Appellant James M. Keohane appeals from a judgment of conviction entered January 3, 1990 in the District of Massachusetts, Mark L. Wolf, *District Judge*, on a jury verdict convicting him of one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (1988).

Appellant raises essentially two claims of error on appeal: 1) that the prosecution was barred by the statute of limitations; and 2) that the government failed to prove

*Of the Second Circuit, sitting by designation.

the mailing element of 18 U.S.C. § 1341 (1988).

We review appellant's claims in light of our decision in *United States v. Doherty*, 867 F.2d 47 (1st Cir.), *cert. denied*, 109 S.Ct. 3243 (1989), an earlier related case which addressed issues substantially similar to those now before us. We are bound by this precedent of our Court. We reject appellant's claims.

We affirm.

### I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This case represents another chapter in the now infamous "Examscam" episode. Examscam involved the theft, sale and distribution of numerous purloined civil service exams by Gerald Clemente, a Metropolitan District Commission (MDC) police officer, and Thomas J. Doherty, a Medford police officer.

Clemente and Doherty began stealing civil service exams from the offices of the Massachusetts Department of Personnel Administration (MDPA) sometime in 1976 or 1977. After stealing the exams, they would make copies and formulate answer sheets. They then would either give or sell copies of the exams and answers to other civil service candidates.

In 1979, appellant received the first of four stolen civil service exams from Clemente. Clemente gave appellant an entrance exam for appellant's son. At some unspecified later date, appellant paid Clemente $3,000 for a copy of a captain's exam. In February 1982, Clemente gave appellant a copy of the 1982 chief's exam. Finally, in February 1983, appellant agreed to pay $5,000 for a copy of the 1983 chief's exam. In addition to monetary compensation, Clemente also expected to receive "reasonable favors" from appellant in exchange for the exams.

Appellant took the February 1983 chief's exam and scored a 97. Out of 345 candidates that took the exam, appellant was one of four candidates to score over 90. Two of the remaining three candidates to score over 90 also had copies of the purloined exam prior to the examination date. Based on the score he received on the chief's exam, appellant was appointed chief of the Malden Police Department.

On March 14, 1989, appellant was indicted on one count of conspiring to commit mail fraud. Two overt acts were charged in this indictment. On September 26, 1989, the grand jury returned a superseding indictment which charged one further overt act not contained in the initial indictment. Appellant was convicted after a jury trial before Judge Wolf. This appeal followed.

For the reasons set forth below, we affirm.

## II.

■ We turn first to appellant's contention that the indictment charging him with conspiracy was barred by the five year statute of limitations. He claims that no overt act occurred after March 14, 1984—the date after which at least one overt act in furtherance of the conspiracy must have occurred in order to sustain appellant's conviction. 18 U.S.C. § 3282 (1988).

We disagree.

·The government alleged three overt acts which òccurred after March 14, 1984. First, appellant notarized a deed purportedly signed by Clemente's father with a mark on January 23, 1985. Second, appellant caused Clemente's nephew, to be hired by the Malden Police Department on March 21, 1984. Finally, appellant continued to receive salary payments in the unlawfully obtained rank of police chief during the period after March 14, 1984.

We need not rule on whether the first and second acts charged by the government are sufficient in and of themselves to constitute overt acts in furtherance of the conspiracy. It is sufficient that appellant received salary payments during a period when the special conspiracy-related societal dangers were still present. Receipt of salary payments from his unlawfully obtained position during this period would constitute overt acts in furtherance of the conspiracy. *Doherty, supra,* 867 F.2d at 62.

Our analysis of appellant's claims begins and ends with our holding in *Doherty, supra,* 867 F.2d at 60–62. In *Doherty,* two defendants performed favors for Clemente in return for copies of purloined exams. The stolen exams facilitated the defendants' obtaining elevated ranks in their respective departments. In exchange for the stolen exams, the first defendant remodeled Clemente's kitchen, provided him with confidential police information and helped his friend obtain police towing contracts. The second defendant helped Clemente's friend obtain city bail bond business. We considered the favors that the defendants performed for Clemente as being indicative of the special dangers associated with a conspiracy, i.e., the dangers of concerted activity and group association. *Id.* at 62. Since the defendants received salary from their unlawfully obtained positions during the period when concerted activities were ongoing, we held that the defendants' receipt of salary payments constituted overt acts for statute of limitations purposes. *Id.*

Similarly, in the instant case, appellant received salary payments during a period when the special dangers associated with a conspiracy were still present. Evidence showed that on January 23, 1985, appellant notarized the mark of Clemente's father on a deed transferring title of the father's home to Clemente and his younger brother. While appellant's notarization of the deed might be innocuous under ordinary circumstances, evidence showed that Clemente's father was partially paralyzed when he purportedly marked the deed with a shaky "X". Moreover, appellant was not present when the deed was marked; yet he notarized it and falsely attested that the father appeared before him and acknowledged the deed. Appellant's act surely represents a quid pro quo for his receipt of the stolen exam and was the type of concerted activity alluded to in *Doherty.*

Appellant also promised Clemente that the Malden Police Department would hire Clemente's nephew. Whether appellant, by act or omission, actually aided the nephew's ultimate appointment is irrelevant to our holding. The mere act of promising to intercede on Clemente's behalf in this matter represents the kind of concerted activity typically associated with a conspiracy.

We therefore hold that appellant's receipt of salary payments from his position as chief of the Malden Police Department, during a period when there were special conspiracy-associated dangers, constituted overt acts within the statute of limitations period.

### III.

■ We turn next to appellant's claim that the government failed to prove an essential element of mail fraud. Specifically, appellant contends that the government failed to prove that he knowingly caused matter to be delivered by mail for the purpose of executing a scheme or artifice to defraud. 18 U.S.C. § 1341 (1988).

We reject appellant's claim of error. We addressed this same question in *Doherty*. There, we held that the MDPA's mailing of notices of promotion interviews, which the defendants reasonably foresaw, was sufficient to satisfy the statute's mailing element. *Doherty, supra,* 867 F.2d at 65.

The record in the instant case shows that such interview notices were sent routinely by the MDPA to successful police chief candidates. It was reasonable for the jury to infer that appellant foresaw that the mails would be used in this manner.

Without considering the government's other evidence of mailings, we hold that the mailing of the notices of promotion interviews was sufficient to satisfy the mailing element of the statute.

### IV.

To summarize:

Appellant's receipt of salary as chief of police, during a period where the special conspiracy-associated societal dangers were present, was sufficient to satisfy the overt act requirement of a conspiracy.

The MDPA's mailing of the notices of promotion interviews was sufficient to satisfy the mailing element of the mail fraud statute.

AFFIRMED.