UNITED STATES of America, Plaintiff,

v.

Peter ARVANITIS; Robert Richards, also known as "Joseph Moretti," "Robert Moreno," "Ray Milano," and "Bob Ricardi"; Peter Leventopoulos, also known as "Muscles"; Perikles Panagiotaros, also known as "Perry Panagiotaros"; John Yannakis; Anastasios Paschalis; Peter Gaitanis; Stelios Panagiotaros, also known as "Stanley Peters"; Nick Chris George; Bill Chris George; Peter George Chekalas, Defendants.

No. 87 CR 515.

United States District Court,
N.D. Illinois, E.D.

Dec. 24, 1987.

Steven A. Miller, Ted Helwig, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Allan A. Ackerman, Chicago, Ill., for Peter Arvanitis.

Thomas J. Royce, Chicago, Ill., for Robert Richards.

Richard Pezzopane, Oak Lawn, Ill., for Peter Leventopoulos.

Ronald D. Menaker, Chicago, Ill., for Perikles Panagiotaros.

William Theis, Chicago, Ill., for John Yannakis.

John Theis, Chicago, Ill., for Anastasious Paschalis.

David P. Schippers and Craig Tobin, Chicago, Ill., for Peter Gaitanis.

Patrick Tuite, Chicago, Ill., for Stelios Panagiotaros.

Sherman M. Carmell, Carmell, Charone, Widmer & Mathews, Chicago, Ill., for Nick Chris George.

Matthias A. Lydon, Lydon & Griffin, Chicago, Ill., for Bill Chris George.

Patrick J. Calihan, Chicago, Ill., for Peter George Chekalas.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

The twenty-eight count indictment in this case names eleven defendants; although only eight defendants are to be tried in this Court.[1] Count 1 charges that four defendants, along with unindicted co-conspirators, conspired to participate in the affairs of a racketeering enterprise. 18 U.S.C. § 1962(d) (1982) ("RICO"). Counts 2–5 charge each RICO co-conspirator with substantive RICO violations. The remaining twenty-three counts charge the four RICO conspirators and the four non-RICO conspirators with various substantive offenses, relating in some way to the affairs of the alleged enterprise.

Currently before the Court are various defendants' motions for severance. Peter Arvanitis, one of the core RICO conspirators, challenges his joinder in this case with the non-RICO defendants. Non–RICO defendants John Yannakis, Peter Gaitanis and Stelios Panagiotaros challenge their joinder with the other non-RICO defendants as improper under Fed.R.Crim.P. 8(b), and alternatively request that we grant them relief from prejudicial joinder pursuant to Fed.R.Crim.P. 14. RICO defendants Perikles Panagiotaros and Arvanitis also seek relief from prejudicial joinder under Rule 14. For the reasons below, we deny defendants' motions for severance under Rule 8 or Rule 14.

The indictment details the activities of an arson and extortion conspiracy. Essentially, the indictment charges that a core conspiracy of the four RICO defendants, Arvanitis, Robert Richards, Peter Leventopoulos and Perikeles Panagiotaros engaged in a conspiracy to destroy by arson restaurants at the request of their owners who, in turn, submitted fraudulent insurance claims. The four core conspirators are all charged in Count 1, the RICO conspiracy count. Each is also charged in a substantive RICO count, Counts 2–5 respectively.

The restaurant owners, non-RICO defendants Yannakis, Stelios Panagiotaros, Anastasios Paschalis and Gaitanis, are each charged, along with the RICO defendants, with conspiracy to commit mail fraud in Count 6 and with aiding and abetting the RICO conspiracy by procuring the racketeering enterprise in Count 14. The owners are also charged with substantive counts of mail fraud arising out of the arsons at their individual restaurants. Additionally, Stelios and Gaitanis are charged with arson arising out of the bombings at their respective restaurants.

### Joinder Under Rule 8(b)

Federal Rule of Criminal Procedure 8(b) permits the government to charge two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). The non-RICO defendants argue that the indictment throws together disparate acts of mail fraud and arson which should properly be tried separately. They argue that the conspiracy is a number of discrete conspiracies, rather than one single conspiracy. Citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), they claim that the conspiracy charged in Counts 6 and 14 is insufficient

---

1. Earlier we granted the motion of three defendants to transfer Count 14 as it relates to them.

to justify joinder under 8(b) because the conspiracy is a "wheel conspiracy," with the four RICO defendants at the hub and the owners at each spoke. They contend that, although there may have been a common hub, the four RICO defendants, Arvanitis, Richards, Leventopolous and Perikles Panagiotaros, the individual "spokes," consisting of business owners connected to the hub, were not enclosed by a "rim," that is, knowledge of the conspiracy. All of the moving defendants contend that Counts 6 and 14 allege only that the defendant business owners were merely customers of the four RICO defendants and that the alleged contract arsons were each a separate event. They argue that, while it might be proper to join one spoke with the hub, it is not proper to join all spokes and the hub.

■ The government agrees with defendants that, in order to allege a valid conspiracy against the businessmen, the indictment must allege that, despite their participation in only a single arson episode, they knew or should have known they were joining an ongoing conspiracy and that they shared a common objective of the conspiracy. Where the parties seem to disagree is whether Count 6 and Count 14 allege such knowledge or circumstances through which it can be inferred that the business owners knew of the conspiracy and its objectives.[2]

Defendants believe that Count 6 is defective and that Count 14 alleges only that the business owners are aiders and abettors of the conspiracy without knowledge of the other aiders and abettors. Thus, whereas each aider and abettor may be tried with the principal, defendant owners argue, the aider and abettor may not be tried with other aiders and abettors.

■ Because we find that Count 14 alleges sufficient facts from which it can be inferred that the business owner "spokes" of the conspiracy wheel had knowledge of the ongoing conspiracy, we need not determine the issue of whether aiders and abettors without such knowledge may be tried together.[3]

■ In determining whether there is misjoinder, a court must look to the indictment. *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). Defendants are alleged to have participated in the "same series of acts or transactions" where they are alleged to have engaged in acts or transactions which are part of a single conspiracy. *Id.* at 1353. In order to allege a single conspiracy, the indictment must allege that all defendants knew that they were joining an ongoing conspiracy. The Supreme Court in *Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1948), in finding that there was a single conspiracy in that case stated:

> We think that in the special circumstances of this case the two agreements were merely steps in the formation of the larger and ultimately more general conspiracy. In that view it would be a perversion of justice to regard the salesman's ignorance of the unknown owner's participation.... [T]he salesmen knew or must have known that others unknown

---

**2.** The business owner defendants also seem to argue that, in addition to the required knowledge that they were joining an ongoing conspiracy, they must have some type of interconnection and dependence. (Yannakis' Reply at 6–7). If this were a "chain" conspiracy rather than a "wheel" conspiracy, that argument might have some merit. *See United States v. Cerro*, 775 F.2d 908, 914 (7th Cir.1985). That, however, is not the case here. The indictment alleges a wheel conspiracy, the four RICO defendants are the "hub" and the business owners are the "spokes." If there are sufficient allegations that a "rim" of knowledge or circumstances through which it can be inferred that the business owners knew of the conspiracy and its objectives, there is no requirement that each spoke be

dependent upon another. Mutual dependence only applies "where the conspirators are different links in the chain of distribution." *United States v. Cerro*, 775 F.2d 908, 914 (7th Cir.1985). "However, that dependence need not be absolute; conspirators often sell in parallel strands rather than in links essential to one another." *United States v. Whaley*, 830 F.2d 1469, 1475 (7th Cir.1987).

**3.** Because we find that Count 14 satisfies the joinder requirements of Fed.R.Crim.P. 8(b), we need not address Count 6 as an independent basis for joinder. (*See* Government's Response n. 1).

to them were sharing in so large a project; and it hardly can be sufficient to believe them that they did not know, when they joined the scheme, who those people were or exactly the parts they were playing in carrying out the common design and object of all. By their separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal.

*Blumenthal,* 332 U.S. at 558, 68 S.Ct. at 257.

The standard followed by this Circuit for distinguishing between single and multiple conspiracies was first stated in *United States v. Varelli,* 407 F.2d 735, 742 (7th Cir.1969), *cert. denied,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972), and was recently reiterated in *United States v. Whaley,* 830 F.2d 1469, 1474 (7th Cir.1987):

> Various people knowingly joining together in furtherance of a common design or purpose constitute a single conspiracy. While the conspiracy may have a small group of core conspirators, other parties who knowingly participate with these core conspirators and others to achieve a common goal may be members of an overall conspiracy.

*Id.* Mere ignorance of all the participants in the conspiracy or even all the details of the conspiracy is immaterial. *United States v. Fitzgerald,* 579 F.2d 1014, 1018 (7th Cir.), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978). All are bound as long as the results fall within the common purposes of the conspiracy and they knowingly contributed toward its furtherance. *Id.*

The issue in this case is whether the indictment alleges sufficient knowledge or circumstances through which the non-core defendants knew they were becoming criminally involved with an ongoing conspiracy. We find that Count 14 makes those allegations. Count 14 describes each of the core defendants' roles in the arson/extortion conspiracy. Arvanitis' role was to use his contacts in the Greek American community to learn the identity of businessmen seeking to destroy their businesses for the purpose of collecting proceeds. He would then arrange for the other members of the conspiracy to commit the actual bombings. Additionally, Peter Leventopoulos would attempt to have the businessmen utilize the services of the conspiracy. As part of the conspiracy, Leventopoulos met with Special Agent Hart and essentially made a "sales pitch" to Hart to solicit his arson business. During this "sales pitch" Leventopoulos stated that he and his associates had performed one hundred arsons. Finally, the indictment alleges that John Yannakis, Peter Gaitanis, Anastasios Paschalis and Stelios Panagiotaros "did knowingly and willfully aid and abet the commission of that offense by procuring the enterprise described in Count I ... to destroy their businesses by means of arson and explosion." We find that these facts are sufficient to allege that the business owner defendants knew that they were requesting the services of an ongoing criminal conspiracy. Accordingly, the indictment alleges a "single" conspiracy rather than multiple conspiracies. *See United States v. Bruun,* 809 F.2d 397, 406 n. 11 (7th Cir.1987).[4]

■ Finally, there is an alternate ground upon which to justify the joinder of the non-RICO defendants with the RICO defendants.[5] Other circuits have held that where a defendant has been charged with criminal acts which were also properly charged as predicate acts under a RICO

---

**4.** Arvanitis alleges that Counts 6 and 14 have been included in the indictment in bad faith. The Seventh Circuit has indicated that misjoinder *may* be justified if the government brought the conspiracy counts in bad faith. *United States v. Schwartz,* 787 F.2d 257, 264 (7th Cir. 1986). However, bad faith means "the government knew it could not prove a link between the charges at trial. *United States v. Velasquez,* 772 F.2d 1348, 1354 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). There has been no such allegation or support for that position in this case. Accordingly, we need not decide if bad faith justifies misjoinder.

**5.** We rely on this argument in the alternative because, although addressed by defendants, the government did not specifically advance this justification.

count, that defendant's trial may be properly joined with the RICO defendants' trials. *United States v. Weisman,* 624 F.2d 1118, 1129 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); *United States v. Gallo,* 668 F.Supp. 736, 748 (E.D. N.Y.1987); *United States v. Rastelli,* 653 F.Supp. 1034, 1042–43 (E.D.N.Y.1986); *United States v. Santoro,* 674 F.Supp. 153, 179 (E.D.N.Y.1986); *United States v. Castellano,* 610 F.Supp. 1359, 1396 (S.D.N.Y. 1985). *Accord United States v. Manzella,* 782 F.2d 533, 540 (5th Cir.), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986).

> [E]ven if a defendant is not named in a conspiracy or RICO count, he may be charged in a separate count, in the same indictment, if he is alleged to have participated in the same series of acts or transactions that constituted the conspiracy or RICO offense, despite the fact that his participation may have been too limited to permit his being included as a co-conspirator or co-racketeer.

*United States v. Castellano,* 610 F.Supp. at 1396–97. As Judge Weinstein stated in his recent opinion, RICO has expanded the scope of joinder:

> With the enactment of RICO, Congress has supplemented traditional "chain" and "wheel" theories with a new conspiratorial concept—the enterprise.... This new notion furnishes prosecutors a much broader scope of authority for joining defendants who are alleged to have participated in a common grouping or association. The RICO conspiracy consists of an agreement to violate the "substantive" RICO law, that is, a conspiracy "to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. § 1962(c), rather than of a conspiracy to perform any particular predicate crime. The "gravamen" of this kind of conspiracy is the agreement on the "overall" objective, namely, to participate in the affairs of the enterprise.... Joinder under Rule 8(b), therefore, is automatically authorized simply through the RICO conspiracy charge, which sup-

plies the "sufficient nexus" to tie the various defendants and the diverse predicate offenses together.... The limitations on the prosecution's power to charge are virtually eviscerated by the RICO conspiracy device.

*United States v. Gallo,* 668 F.Supp. at 747. Based on this reasoning, Judge Weinstein then found that the non-RICO defendants had "been properly joined because the substantive counts with which they were charged were also predicate acts for other co-defendants in the RICO conspiracy count." *United States v. Gallo,* 668 F.Supp. at 748. In this case Stelios Panagiotaros is charged in Count 19 with arson in connection with the bombing of Stanley's Fruitmarket. The Stanley's Fruitmarket arson was specifically listed as a predicate act in Counts 3–5 and mentioned in Count 1, the RICO conspiracy count. Accordingly, the counts against Stelios Panagiotaros were correctly joined. Peter Gaitanis is charged in Count 15 with arson in connection with the bombing of the Bloomingshire Restaurant. The Bloomingshire Restaurant arson was specifically listed as a predicate act in Counts 3 and 5, and mentioned in Count 1, the RICO conspiracy count. Accordingly, we find that Gaitanis was properly joined. However, the substantive mail fraud counts Yannakis is charged with in this case are not listed as a predicate act in the RICO counts because the predicate acts are for the arson of each owner's restaurant and the substantive counts against Yannakis are for mail fraud which occurred when he allegedly filed false insurance claims on the restaurant after the fire. We do not find this changes the application of the general rule because he "is alleged to have participated in the same series of acts or transactions that constituted the conspiracy or RICO offense...." *United States v. Castellano,* 610 F.Supp. at 1396–97. *Accord United States v. Manzella,* 782 F.2d at 540 ("Facts surrounding the 'theft' of [the non-RICO defendant's] automobile and the ensuing mail fraud are mentioned in counts one and two, however, as examples of [the RICO defendant's] pervasive pattern of racketeering"). The mail

fraud counts against Yannakis arise out of his mailing a false insurance claim on the Arrowhead Restaurant fire. The Arrowhead Restaurant fire is specifically listed as a predicate act in Counts 2 and 5, and mentioned in Count 1, the RICO conspiracy count. Accordingly, we find that Yannakis was properly joined.

In conclusion, we find that the non-RICO conspirators were properly joined together and with the RICO conspirators pursuant to Fed.R.Crim.P. 8(b) in the indictment because the indictment included a unifying conspiracy count and, alternatively, because they are alleged in the indictment to have participated in the same series of acts or transactions that constituted the RICO offenses.

### Severance Under Rule 14

 A number of defendants also seek severance under Fed.R.Crim.P. 14. Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.

Fed.R.Crim.P. 14. In deciding a motion for severance, the district court should balance the interests of the defendant in severance against the government's interest in judicial economy. *United States v. Rivera*, 825 F.2d 152, 159 (7th Cir.1987). When a group of people are charged with participating in the same crime, they ordinarily are tried together even if the evidence is stronger against one or some than against others. *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). The danger of prejudice to the least guilty or perhaps prejudice to all from the sheer confusion of a multi-defendant trial, is in all but the most unusual circumstances considered outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all. *Id.* Also, a trial judge should give defer-

ence to the strong public interest in having persons jointly indicted tried together, particularly where, as here, a conspiracy is charged and may be proved by evidence that arises out of the same act or series of acts. *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985). Justice Scalia, writing for the Supreme Court on another issue, discussed the current view favoring joint trials:

> Joint trials play a vital role in the criminal justice system, accounting for almost one third of federal criminal trials in the past five years.... Many joint trials—for example, those involving large conspiracies to import and distribute illegal drugs—involve a dozen or more codefendants.... It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson v. Marsh*, —— U.S. ——, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987). Additionally, the Seventh Circuit in a recent case regarding a severance motion made the following observations regarding the importance of joint trials in conspiracy cases:

> There is a strong interest in joint trials of those who engaged in a common enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who

need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.

*United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

■ With these considerations in mind, we examine the defendants' various arguments for severance. The principal argument advanced to justify severance is that, because of the number of defendants and the number of different counts, the jury will not be able to sift through the voluminous evidence and consider the evidence separately as to each defendant. However, a joint trial will always raise the specter of jury confusion, but to obtain severance a defendant must show that he or she cannot get a fair trial without it. *United States v. Zanin*, 831 F.2d 740, 744 (7th Cir.1987). The question of whether a trial of multiple defendants tried simultaneously infringes upon a defendant's right to a fair trial depends on whether it is within the jury's capacity in the particular fact situation to follow admonitory instructions and to keep separate, collate and appraise the evidence relevant only to each defendant. *United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir.1985). We think the defendants underestimate the jury and overestimate the complexity of this case. Although there are twenty-eight counts against eight defendants, the conspiratorial events underlying the 28 counts break out into just eight discrete factual scenarios. There are five arson episodes and three extortion episodes. The arson episodes are fires at the Arrowhead, Bonfire and Bloomingshire Restaurants and George's and Stanley's Fruitmarkets. The three extortion episodes are the extortion of John Katsamangas and Chris Ralides; the extortion of Franteskos Sdralis; and the extortion of John Kourelis. With proper limiting instructions, the jury should be able to "keep separate, collate and appraise the evidence" relative only to each defendant.

■ A number of the moving defendants raise specific reasons why severance is necessary as to their counts. Perikles Panagiotaros contends that a joint trial will irreparably prejudice him because "the evidence of the conspiracy counts, as well as the related substantive offenses, is far stronger as to the other alleged members than it is to defendant." However, the fact that evidence against one defendant is proportionately greater than against another is not in itself sufficient to justify severance. *United States v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir.), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); *United States v. Grabiec*, 563 F.2d 313, 319 (7th Cir.1977). Again, with proper limiting instructions, the jury should be able to keep the evidence straight and apply it properly. Perikles Panagiotaros also argues, as does his brother Stelios, that a joint trial with Robert Richards would be unduly prejudicial because the fact that Richards is a convicted felon will be brought into evidence. Again, the fact that a co-defendant has a criminal record is not prejudicial per se. *United States v. Dalzotto*, 603 F.2d 642, 646 (7th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979); *United States v. Alpern*, 564 F.2d 755, 758 (7th Cir.1977); *United States v. Robinson*, 503 F.2d 208, 214–15 (7th Cir.1974), *cert. denied*, 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427 (1975).

■ Stelios Panagiotaros also argues that because the jury will hear evidence that relates to his brother Perikles, it can "only have the effect of spilling over onto the defendant to his detriment." Defendant Yannakis makes a related argument, but in his case, he argues that he needs severance from his partner in the Arrowhead Restaurant, defendant Anastasios Paschalis. Although one is concerned

about spillover from his brother and the other his partner, both defendants raise the same issue, that is, jury confusion because of a relationship. Again, the mere possibility of imputed guilt by association is not *per se* prejudicial. *United States v. Zanin*, 831 F.2d 740, 744 (7th Cir.1987). With proper limiting instructions,[6] the jury should be able to do its job properly.

[15] Defendant Peter Gaitanis alleges generally in his motion for severance that "a joint trial will result in a direct clash of constitutional privileges between this Defendant and his Co-defendants; and there will follow a clear and overwhelming prejudice to this Defendant. The joint trial in this case will preclude Mr. Gaitanis from exercising his Sixth Amendment right to call one or more of his Co-defendants to the stand for the purpose of testifying in his behalf." Gaitanis does not, however, support this assertion with an affidavit or the existence of recorded testimony that a particular co-defendant would testify in a manner which would exculpate him. "Severance cannot be granted on the basis of a vague, unsupported assertion that a co-defendant would testify favorably in a separate proceeding." *United States v. Andrus*, 775 F.2d 825, 847 (7th Cir.1985). Gaintanis also makes an undeveloped allegation that the "defense of this Defendant will be directly antagonistic to that of several co-defendants; and, therefore, each Defendant may be prejudiced as to each other." However, "[s]uch a claim will only justify severance if the defenses 'conflict to the point of being irreconcilable and mutually exclusive,' so that 'acceptance of one defendant's defense will preclude the acquittal of the other defendant.'" *United States v. Bruun*, 809 F.2d 397, 407 (7th Cir.1987). Because Giantanis does not indicate just what his defense is and how his defense will be "mutually antagonistic," we cannot determine whether severance is jus-

tified. Without any support, Giantanis' allegation does not justify severance.

Finally, a number of defendants contend that they will be prejudiced *per se* because a joint trial will take longer than individual trials. This is not necessarily true. First, although initial estimates of the time involved in trying this case ranged from six to eight weeks, with the transfer of the Oregon defendants, the trial is likely to be shorter. Additionally, Count 14 charges the non-core defendants with aiding and abetting the commission of the arson offenses by "procuring the enterprise described in Count I, paragraph four of the indictment to destroy their business...." Accordingly, evidence which is relevant to proving the existence of the enterprise is admissible, including the evidence of the crimes not charged against a particular defendant. Therefore, separate trials do not necessarily mean shorter trials.[7]

In conclusion, we deny the defendants' various motions for severance because we do not find that the potential prejudice to each defendant outweighs the public interest in a joint trial.

---

As discussed above, defendants' Arvanitis, Perikles and Stelios Panagiotaros, Yannakis and Gaitanis' motions for improper joinder or for severance are denied. It is so ordered.

---

6. We invite defense counsel to submit to the court their proposed drafts of such limiting instructions.

7. This is especially true because of the success of the good faith efforts on the part of counsel in the preparation of appropriate trial stipulations as to the introduction of non-contested testimony and exhibits.