### UNITED STATES of America

### v.

**Michael C. HABICHT, Robert Emmet Joyce, James Francis Melvin, James Michael Murphy, Jr., Michael Oliver McNaught, and Patrick Joseph Nee.**

Crim. A. No. 91–10039–MA.

United States District Court,
D. Massachusetts.

June 3, 1991.

Michael Laurano, Boston, Mass., for defendant Michael C. Habicht.

George C. McMahon, McMahon Law Offices, North Quincy, Mass., for defendant Robert Emmet Joyce.

Anthony Cardinale, Boston, Mass., for defendant Michael Oliver McNaught.

James W. Lawson, Oteri, Weinberg & Lawson, Boston, Mass., for defendant James Francis Melvin.

Joseph Murphy and Patrick Murphy, Boston, Mass., for James Michael Murphy, Jr.

Fishman, Kenneth J. Fishman, Bailey & Fishman, Boston, Mass., for defendant Patrick Joseph Nee.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

Michael C. Habicht, Robert Emmet Joyce, James Francis Melvin, James Michael Murphy, Jr., Michael Oliver McNaught, and Patrick Joseph Nee are charged in a nine count indictment alleging violations of 18 U.S.C. § 1962(c) and (d) (conspiracy to violate and substantive violation of the Racketeer Influenced and Corrupt Organizations Act or "RICO"), 18 U.S.C. § 1951 (conspiracy and attempt to obstruct commerce by extortion of property), 18 U.S.C. § 2113(a) (attempted robbery of a federally insured bank), 18 U.S.C. § 371 (conspiracy to violate 18 U.S.C.

§ 2113(a)), and 18 U.S.C. § 924(c)(1) (use of firearms during commission of a dangerous felony). The charges stem from what the Government contends were two distinct conspiracies, an agreement to rob a Brink's, Inc., armored truck carrying money from the Shawmut Arlington Trust Company in Methuen, Massachusetts, and an agreement to rob a Transfer Services, Inc., armored truck carrying money belonging to the Bank of New England, in Abington, Massachusetts.[1] The latter plan ended abruptly on January 9, 1991, when all of the defendants, along with a considerable number of weapons, were seized in Abington during what the Government alleges was an attempt to carry out the Transfer Services robbery.

The defendants raise a number of issues by way of pretrial motion. This memorandum and order will address the motion to strike and to dismiss and the motion for relief from prejudicial joinder.

### I. Motion to Dismiss Counts One and Two

The defendants Habicht, Joyce, Melvin, and Murphy move to strike Racketeering Act A from Counts One and Two and to dismiss Counts One and Two of the indictment.[2] Count One of the indictment charges a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Count Two, which charges a substantive violation of RICO, 18 U.S.C. § 1962(c), incorporates by reference the same allegations. The defendants argue that in a RICO prosecution, the Government must plead particular facts to demonstrate that a RICO charge can be proven. More specifically, the defendants argue that the Government has failed to

show that the defendants agreed to participate in an enterprise through a pattern of racketeering: that the Government lacks "proof" of an enterprise, an agreement, the commission of more than one predicate crime, or the continuity of criminal action necessary to establish the RICO violations charged. The Government does not dispute that it will be required to prove these elements to prevail on the RICO charges, but asserts that a RICO indictment is not obliged to follow any special rules of detailed factual pleading. The Government argues that a RICO indictment must only follow ordinary principles of criminal pleading, and that the instant indictment meets all of those requirements.

■ Federal Rule of Criminal Procedure 7(c) requires that the indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 114, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974).

■ A RICO conspiracy charge must allege that each defendant agreed to participate in an enterprise through a pattern of racketeering and agreed to commit at least two predicate acts. *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). The existence of an

---

1. At a pretrial hearing, in response to the court's enquiry, the Government explained that charges were brought under both 18 U.S.C. § 1951, which prohibits among other things, obstruction of interstate commerce by means of robbery or extortion, and 18 U.S.C. § 2113(a), which prohibits the taking of bank property by means of force or extortion, for the same conduct because of the possibility that the evidence might fail to show that *bank* property was involved in the attempt on the armored truck. I have expressed my concerns whether the 1986 amendment of 18 U.S.C. § 2113(a) permits continued use of the Hobbs Act to prosecute armored truck robberies, particularly when the crimes charged are

conspiracy and an aborted attempt, pled specifically as directed at the taking of bank property from the armored trucks. *See* H.R.Rep. No. 797, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong. & Admin.News 6138, 6155–56. My concerns, however, do not permit me to re-draft the indictment. As it stands, I am persuaded that the charges are within acceptable prosecutive discretion.

2. The two other defendants, McNaught and Nee, are not named in these charges and accordingly do not join this motion.

"enterprise," as defined by 18 U.S.C. § 1961(4), and a "pattern of racketeering activity", as defined by 18 U.S.C. §§ 1961(1), (5), are separate elements of the offense and must be separately charged. Pattern consists of something more than the predicate acts themselves: it requires "continuity plus relationship". *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Continuity is not an element of RICO, but is "nevertheless a necessary characteristic of the evidence used to prove the existence of pattern." *United States v. Boylan*, 898 F.2d 230, 250 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). The substantive RICO offense differs in that the Government must show the commission, and not just the agreement to commit the predicate offenses. *See United States v. Ruiz*, 905 F.2d 499, 503 (1st Cir.1990).

There is simply no case law to support the defendants' contention that a RICO indictment must plead facts in extraordinary detail. In fact, as the Government suggests, the First Circuit case law seems to indicate otherwise. *See Winter*, 663 F.2d at 1135–38; *United States v. Angiulo*, 847 F.2d 956, 964, *cert. denied*, 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110 (1988). Other circuits have consistently rejected the argument that a RICO indictment must meet a higher standard of pleading than other criminal indictments. *See, e.g., United States v. Cauble*, 706 F.2d 1322, 1333–34 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984) (rejecting post-conviction challenge to the specificity of an indictment charging RICO violations under the standard three-part test of sufficiency elucidated in *Hamling* ).

The defendants' reliance on *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) to justify a higher standard of specificity is misplaced because there is simply no factual deficiency in this case analogous to that in *Russell. Russell* involved a prosecution under 2 U.S.C. § 192 for failure to answer questions pertinent to a subject under inquiry by Congress. The Court held that since the indictment did not specify the subject under inquiry in Con-

gress, which was "the very core of [the] criminality" alleged, the indictment failed because it did not perform one of its essential functions, to inform the defendant " 'of what he must be prepared to meet.' " *Russell*, 369 U.S. at 764, 82 S.Ct. at 1047 (citations omitted). "Where guilt depends so crucially upon a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.*

■ Count One of the indictment in this case charges that the defendants constituted an "Enterprise" within the meaning of § 1961(4):

> that is, a group of individuals associated in fact which engaged in various criminal activities, consisting of acts indictable under Title 18, United States Code, Section 1951 (relating to interference with interstate commerce by acts of robbery) and acts involving robbery in violation of Massachusetts General Laws, Ch. 265, § 17 and Massachusetts common law.

Indictment, Count I, ¶ 1.

As the Government points out, this description of the enterprise is quite similar to the one found adequate in *Winter*, 663 F.2d at 1136. It alleges the existence of an enterprise, the association of each defendant with that enterprise, and the specific unlawful purpose of the association.

■ Count One further charges a conspiracy between the defendants to conduct the enterprise through a pattern of racketeering. It specifies a general date, approximately December of 1989 through January 9, 1991, and a place, the District of Massachusetts. Indictment, Count I, ¶ 2. It describes the purposes of the conspiracy, to "plan, prepare for, and execute armed robberies" *Id.* at ¶ 3, and to "use incendiary devices and weapons, including machine guns, in executing armed robberies." *Id.* at ¶ 4. Although there is no requirement in the First Circuit that a RICO conspiracy charge specify overt acts in furtherance of the conspiracy, *United States v. Angiulo*, 847 F.2d at 964, the indictment lists a number of overt acts committed by the defen-

dants and their coconspirators in furtherance of the racketeering conspiracy. Indictment, Count I, ¶ 7. These allegations are certainly sufficient to alert the defendants to the nature of the conspiracy charged.

■ The acts of racketeering that the defendants are charged with agreeing to commit (Count One) and committing (Count Two) are likewise facially adequate. The two acts of racketeering, which are referred to as "Racketeering Act A" and "Racketeering Act B" (and will be so referred to in this memorandum) are set out in some detail in paragraph five of Count One. Paragraph six charges that each of the defendants agreed to and did participate in the pattern of racketeering activity. Racketeering Act A charges a conspiracy (the "Brinks Conspiracy") extending from approximately April, 1990, to June 22, 1990, to take money belonging to Shawmut Arlington Trust Company from employees of Brink's, Inc., in violation of the Hobbs Act, 18 U.S.C. § 1951, and of M.G.L. c. 265 § 17, and of Massachusetts common law. Racketeering Act B charges a conspiracy (the "Transfer Services conspiracy") extending from approximately July 25, 1990, to January 9, 1991, to take money belonging to Bank of New England from Transfer Service, Inc., in violation of the Hobbs Act, 18 U.S.C. § 1951, and of M.G.L. c. 265 § 17, and of Massachusetts common law. Racketeering Act B also charges an attempt (the "Transfer Services attempt") to violate 18 U.S.C. § 1951 on January 9, 1991.

I find that the indictment in this case is clearly adequate. All of the elements of the crimes are charged. The defendants have fair notice of the theory and factual outline of the case the Government intends to offer at trial. The Government has specified the dates, participants, goals, methods, and victims of the racketeering enterprise which it proposes to prove at trial. There is simply no crucial fact lacking which prevents the defendants from meeting the charges. The allegations are specific enough for the defendants to prepare a defense in this case and to defend against a second prosecution for the same conduct, and thus the standards outlined in *Hamling* have been fully satisfied. Thus, I find that the RICO charges in the indictment are sufficient.

■ In a related but distinct argument, the defendants suggest that the Government cannot show a pattern of racketeering because it has only charged, at most, a single predicate act, and that Racketeering Act A must be stricken from the indictment as multiplicious. The defendants argue that the Government has impermissibly and artificially divided what is clearly one conspiracy, a conspiracy to *commit an armed robbery of bank money from an armored truck,* into two conspiracies, a conspiracy to rob a Brinks truck carrying Shawmut's money, and a conspiracy to rob a Transfer Services truck carrying Bank of New England's money, simply because the Government desires to transform a bank robbery case into a racketeering case. The defendants further argue that this division of a single conspiracy into multiple conspiracies violates the double jeopardy clause, and that they are thus entitled to a pre-trial evidentiary hearing on the Government's evidence to establish their claim.[3]

■ In this context, the multiplicity argument is not without a certain appeal, because the issue at stake is not merely whether one or multiple conspiracies are properly charged, but whether a grander scale RICO prosecution is appropriate to the conduct. This court has already expressed concern on this very issue in open court. The argument must ultimately fail, however, because the defendants' thesis hinges on an erroneous equation of what the Government must charge in the indictment with what the Government must prove at trial. The allegations of an indictment are presumed to be true for purposes of assessing sufficiency, and inquiry into whether the Government can prove its case is inappropriate at this stage. *Boyce Mo-*

---

**3.** The argument that a pre-trial evidentiary hearing is warranted to resolve this issue is developed in defendant Melvin's response to the Government's opposition to the motion to dismiss.

*tor Lines, Inc. v. United States,* 342 U.S. 337, 343 & n. 16, 72 S.Ct. 329, 332 & n. 16, 96 L.Ed. 367 (1952); *See United States v. Campbell Hardware, Inc.,* 470 F.Supp. 430, 433 (D.Mass.1979).

 Whether a single or multiple conspiracies exist is normally a question of fact. *United States v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). "[T]he precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects." *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). Whether a single or multiple conspiracies can be proven depends upon a number of factors: "(a) the time during which the activities occurred; (b) the persons involved; (c) the places involved; (d) whether the same evidence was used to prove the two conspiracies; and (e) whether the same statutory provision was involved in both conspiracies." *United States v. Gomez–Pabon,* 911 F.2d 847, 860 (1st Cir.1990) (citations omitted).

On its face, this indictment charges two distinct agreements. The allegations are fairly specific, charging schemes closely related in time but not overlapping, with some common conspirators, similar methodologies, and the same type of victim. The overt acts are not common to the two conspiracies, and the victims, although similar, are different institutions. While the evidence at trial may ultimately support an inference that only one agreement was reached—an agreement to rob a bank rather than an agreement to rob two banks—at this stage, this is not the only inference which can be made from the indictment. Given the existence of these factual distinctions, which support the Government's charges of two distinct conspiracies, the Government is entitled to proceed to trial.

 The double jeopardy claim raised by the defendants does not alter this result. The double jeopardy clause protects against successive prosecution after conviction or acquittal for the same offense, and against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). A pre-trial evidentiary hearing is only required in cases where the double jeopardy clause is alleged to be violated by a *successive prosecution* for the same offense. *See, e.g., United States v. Booth,* 673 F.2d 27, 29 (1st Cir.), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982); *United States v. Liotard,* 817 F.2d 1074, 1079 (3d Cir.1987); *United States v. Abbamonte,* 759 F.2d 1065, 1068 (2d Cir.1985).[4] Multiple-punishment double jeopardy challenges, however, are considered after conviction, upon appeal, on a sufficiency of the evidence basis. *See, e.g., Gomez–Pabon,* 911 F.2d at 861 (finding that while one count charged conspiracy to import marijuana and another to import cocaine, the evidence failed to establish two distinct conspiracies, "[r]ather, it suggests that when the first venture was thwarted, the conspirators simply adapted their plan to the situation"). The reason for this distinction in the case law is clear, and is reflected by the fact that an interlocutory appeal may be taken from a denial of a motion to dismiss grounded in a successive-prosecution double jeopardy claim: interlocutory appeals are allowed because the protection involved is against the burden of being put through a second trial for the same offense, a prohibition distinct from that against subjecting the defendant to multiple punishment. *Abney v. United States,* 431 U.S. 651, 660–61, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977). "When the right to be free from trial is not vindicated prior to trial, that right can never be recovered. When the right to be tried in a *particular manner* is not vindicated prior to trial, the defendant can still avail himself of post conviction remedies after the fact." *Liotard,* 817 F.2d at 1080. (emphasis added). In this case, the defendants' rights are fully pro-

---

4. *United States v. Garcia–Rosa,* 876 F.2d 209 (1st Cir.1989), cited by the defendants, also involves a claim of successive prosecution. In that case, the defendant apparently made a pre-trial double jeopardy objection but did not take an interlocutory appeal on the issue, and so the court was considering the claim post-conviction, applying the allocation of burdens of proof employed by other courts in pre-trial proceedings. *Id.* at 227 & n. 15.

tected by the availability of post conviction attacks for any multiple punishment.

The motion to strike Racketeering Act A is therefore denied; the motion to dismiss Count One and Count Two is also denied.

## II. Joinder of Defendants Nee and McNaught

Defendants Nee and McNaught move for relief from prejudicial joinder of the charges against them with those against Habicht, Joyce, Melvin, and Murphy. Nee and McNaught are named in five of the nine counts of the indictment. All of the charges against these two defendants stem from the Transfer Services conspiracy and attempt. They were not charged in any of the counts involving the alleged Brinks conspiracy, and thus, not in the RICO counts. Nee and McNaught argue that joinder as to them is improper under Fed.R.Crim.P. 8(b), and alternatively that even if they were properly joined initially, they are entitled to relief from prejudicial joinder pursuant to Fed.R.Crim.P. 14.

### A. Initial Joinder of Defendants

[13, 14] Federal Rule of Criminal Procedure 8(b) provides that:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Thus, the propriety of joinder is determined from the charges in the indictment. *Schaffer v. United States*, 362 U.S. 511, 514, 80 S.Ct. 945, 947, 4 L.Ed.2d 921 (1960). A rational basis in fact must be discernible from the face of the indictment. *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir.1983). Once a series of related offenses is established, each defendant need not be involved in all of the transactions charged: the test is whether the transactions themselves are related. *United States v. Martinez*, 479 F.2d 824, 828 (1st Cir.1973); *accord United States v. Barbosa*, 666 F.2d 704, 707 (1st Cir.1981).

■ Joinder is clearly proper in this case. The indictment alleges that Habicht, Melvin, Murphy and Joyce engaged in a racketeering enterprise, the purpose of which was to plan and carry out armed bank robberies. The indictment further alleges two predicate acts committed by those defendants in furtherance of the racketeering enterprise, the Brinks conspiracy and the Transfer Services conspiracy. Nee and McNaught are charged with participation in the Transfer Services conspiracy, which allegedly culminated in an attempt on the day of the arrest of all six defendants. The Transfer Services conspiracy has already been deemed sufficiently related to the Brinks conspiracy to survive a motion to dismiss the RICO counts against their codefendants. Since both conspiracies were properly charged as predicate acts in a valid RICO charge, the charges by definition constitute a series, making joinder proper even as to the defendants not implicated in the RICO counts. *See United States v. Garcia*, 848 F.2d 1324, 1333 (2d Cir.1988), *rev'd on other grounds*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *United States v. Arvanitis*, 676 F.Supp. 840 (N.D.Ill.1987), *aff'd mem. sub nom. United States v. Gaitanis*, 902 F.2d 37 (7th Cir.1990) (collecting cases).

*United States v. Winter*, cited by the defendants, does not indicate otherwise. *Winter* involved a fifty count indictment, which included an all-embracing RICO conspiracy charge, alleging that the defendants engaged in a huge race fixing scheme encompassing twenty races. Two defendants were charged with bribery in connection with all twenty races. Two other defendants were charged with bribery in connection with seven of those races, and two defendants were charged with bribery in connection with only one race. The court indicated that regardless of the presence of the RICO charge, the two defendants charged with fixing seven races were properly joined with the two defendants charged with fixing all twenty. The court ruled that the two defendants charged in connection with one race could neither be charged with RICO (the government having alleged only one predicate act at most)

nor fairly joined with the others. The discrepancy between the number and quality of the acts of the improperly joined defendants and the properly joined defendants in that case was marked. It is not comparable to the situation here, where only two discrete schemes are charged, with movants involved in half of them.

### B. Is Joinder Unacceptably Prejudicial?

■ Notwithstanding my finding that initial joinder was proper, the defendants may still be entitled to severance on the basis of Fed.R.Crim.P. 14.[5] Rule 14, unlike Rule 8, requires scrutiny of not just the face of the indictment, but of the evidence as it will be produced at the joint trial. *See Arruda,* 715 F.2d at 679. The joinder rule represents a "balanced compromise between a defendant's right to have his guilt considered separately and the systemic benefits of consolidated trials." *Boylan,* 898 F.2d at 245 (citing cases). The burden is upon the defendant to show prejudice. *United States v. Turkette,* 656 F.2d 5, 9 (1st Cir.1981). "To prevail, he must make a 'strong showing of prejudice' likely to result from a joint trial." *United States v. Luna,* 585 F.2d 1, 4 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978) (quoting *Sagansky v. United States,* 358 F.2d 195, 199 (1st Cir.1963)).

At the outset, it is useful to summarize briefly the most direct evidence pertaining to Nee and McNaught that is expected to be presented at trial. It is not insubstantial. Nee and McNaught, along with codefendant Joyce, were arrested in a van near the Bank of New England in Abington, around the time of the scheduled armored truck delivery. The driver's seat in the van was empty, and codefendant Melvin was arrested on foot nearby. Codefendants Habicht and Murphy were arrested in another car in the vicinity. The van in which Nee and McNaught were found contained one .357 magnum, one Mach–10 with silencer, one Mini–14 fully automatic, and one Uzi, all of which were fully loaded. Also

seized from the van were a flare gun, a fake grenade, a fake bomb, an incendiary device, empty duffle bags ski masks, and walkie talkies set to the same frequency of an identical set found in the car with Habicht and Murphy. Affidavit of James C. Crawford at 42–43. A note seized from a codefendant's car also named Nee and McNaught as participants in the Transfer Services scheme. *Id.* at 45.

Against this background, the defendants advance a number of reasons why joinder is prejudicial to them. These will be discussed *seriatim.*

Nee and McNaught first argue that their guilt on the weapon offense, 18 U.S.C. § 924(c), may hinge upon their *Pinkerton* liability for the acts of their coconspirators: whether it was foreseeable that their codefendants would use automatic and silenced weapons in furtherance of the conspiracy to rob a bank. They argue that their ability to present a defense on this point, namely that they were last minute additions to the conspiracy who would not have known all of the details, including the extent and dangerousness of the firearms, will be unfairly hampered by a joint trial.

An antagonist defense can justify severance only when "the defenses are so inconsistent that the jury would have to believe one defendant at the expense of another; *the conflict alone* establishes the guilt of a defendant." *Arruda,* 715 F.2d at 679 (emphasis added). "Fingerpointing" or "tattling" among the codefendant is insufficient reason to grant a severance. *Id.*

Here, it is hard to see how the defense that Nee and McNaught propose is intolerably antagonistic to that of other defendants. They have pointed to no anticipated evidence of a coconspirator, which if believed, would compel the jury to convict them on the weapons charge. Accordingly, severance is not warranted on these grounds.

Nee and McNaught also argue that since they are not implicated in the RICO

---

**5.** Federal Rule of Criminal Procedure 14 provides in relevant part that:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of the defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

charges, a large portion of the evidence at a joint trial will be irrelevant to them. They contend that this evidence, including the testimony of the Government's main witness, David Ryan, will overwhelm the jury and cause a substantial likelihood of conviction by an unfair "spillover" of evidence or a finding guilt by mere association.

This argument is simply not persuasive on the facts of the case. The fact that some evidence is admissible against only some of the defendants is not sufficient reason to justify severance. *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 143 (1977). Nee and McNaught are not charged in the RICO counts. Thus, although it is likely that a substantial amount of evidence admissible against the others will not be admissible against them, they will not be inevitably entangled in the web of racketeering charges which the Government seeks to prove against the RICO defendants. That evidence is easily separable from the evidence against Nee and McNaught. The charges in the indictment are not numerous, and the two different robbery schemes alleged by the Government can be easily differentiated. *See Luna*, 585 F.2d 1 at 5.

██ Defendants finally argue that a joint trial would intolerably impinge upon their sixth amendment right to confrontation. They assert an expectation that defendant Joyce will exercise his fifth amendment right not to testify at a joint trial, and argue that his testimony is important to their defense.

██ Severance based upon the need to cross-examine a co-defendant who will refuse to testify at a joint trial requires that the defendant show "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed." *United States v. Drougas*, 748 F.2d 8, 19 (1st Cir.1984). If these conditions are met, then the court must go on to analyze the expected value and impact of the proposed testimony, giving consideration to the timeliness of the motion and systemic concerns. *Id.*

The defendants here have failed utterly to make the requisite threshold showing. They present nothing that would enable this court to believe that Joyce would testify if called at a separate trial, or, if called, what his testimony would be. They intimate that if called, Joyce would testify to their marginal role in the scheme. They present only conclusory assertions that they would like to cross-examine Joyce regarding "his conversations with Ryan about weapons, the dissemination of information to his co-defendants and Nee and McNaught's lack of knowledge regarding weapons or alleged plans to commit a robbery." Brief in Support of Motion for Relief from Prejudicial Joinder at 8. These representations are not substantial enough to warrant consideration of severance on the grounds of the need to cross-examine a codefendant. *See United States v. Reis*, 788 F.2d 54, 56 (1st Cir.1986); *Arruda*, 715 F.2d at 679–80.

██ The objections of the defendants to a joint trial must be viewed against the obvious benefits of trying these defendants together. *Boylan*, 898 F.2d at 245. The overlap of events and legal issues, while by no means complete, is substantial. Separate trials would require repetition of a substantial portion of the same evidence, and would require a corresponding burden on the resources of the court, the Government, and the citizens serving as jurors. While not dispositive, these are legitimate considerations. *See Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987). Weighed against these obvious benefits are the comparatively weak assertions of prejudice made by Nee and McNaught. The events and evidence which form the basis of the charges against Nee and McNaught are readily distinguished from the earlier events implicating their codefendant. The number of charges in the indictment is not large. The case as to these defendants appears to be limited a particular scheme which a jury can readily be instructed to focus upon and distinguish from charges leveled against their codefendants.

The motion for relief from prejudicial joinder is accordingly denied.

*Order*

The motion to strike Racketeering Act A and to dismiss Counts One and Two is DENIED; the motion for relief from prejudicial joinder is DENIED.

SO ORDERED.