UNITED STATES, Plaintiff,

v.

Nicholas MAVROULES, Defendant.

Crim. No. 92–10243–MA.

United States District Court,
D. Massachusetts.

March 30, 1993.

Tracy A. Miner, Francis X. Bellotti, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The Defendant, Nicholas Mavroules, has filed certain objections to four pretrial rulings made by the United States Magistrate Judge in this case. The Magistrate denied each of the Defendant's four motions to dismiss the charges in this indictment. I adopt the Magistrate's findings for the following reasons.

The Defendant claims that Counts One and Seventeen should be dismissed because of defects in the indictment. The rule is that an indictment only needs to set forth unambiguously the elements of an offense and the essential facts constituting the offense charged. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Allard*, 864 F.2d 248, 250 (1st Cir.1989). *See* Fed. R.Crim.P. 7(c)(1). Count One, charging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title 18 U.S.C. § 1962(c), describes the Defendant's alleged participation in an enterprise, which engaged in a pattern of racketeering activity and which had an effect on interstate commerce.[1] In accord with the Magistrate, I

---

1. One of the Defendant's principal objections is the alleged failure of the United States to plead the "continuity" of the various predicate RICO acts. It is not, however, incumbent on the United States to plead continuity in the indictment. *See United States v. Boylan*, 898 F.2d 230, 250 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990) (continuity is not formal element of RICO offense). It is sufficient that the United States pled the Defendant's involvement in a "pattern" of racketeering activi-

ties. *See id.*, at 249 (pattern of racketeering activities must be alleged).

The Defendant cites *Apparel Art International, Inc. v. Jacobson*, 967 F.2d 720 (1st Cir.1992), for the proposition that this court may look beyond the indictment to decide whether the United States has in fact sufficiently shown a pattern of racketeering activities. In *Apparel Art*, the First Circuit found that the alleged racketeering activities were too unrelated to constitute a pattern and dismissed the RICO claim against the defendant. *Id.*, at 724. In contrast to this case,

find that Count One was adequately pled by the United States. Whether the United States can prove a RICO violation at trial is another matter. Therefore, I deny the Defendant's Motion to Dismiss Count One.[2]

■ I also find that Count Seventeen, charging conspiracy to commit extortion, Title 18 U.S.C. § 1951, was well pled. As required, the indictment alleges that the Defendant entered into an agreement for unlawful purposes—to extort money for himself and employment for his brother in return for assistance in securing a liquor store license for Ralph Kaplan; that a sufficient nexus with interstate commerce existed, *see United States v. Devin,* 918 F.2d 280, 293 (1st Cir. 1990) (burden of proving effect on interstate commerce is "not onerous"); and that the Defendant used his office wrongfully to instill economic fear. Thus, I decline to dismiss Count Seventeen.[3]

■ In addition, contrary to the Defendant's assertions, I find that Counts Seven and Eight are not multiplicitous. Each count requires proving a different fact. Count Seven requires proof that the Defendant filed a false financial disclosure report on May 15, 1990, and Count Eight requires proof that the Defendant filed another false disclosure report on June 11, 1990. *See United States v. Guzman,* 781 F.2d 428, 432–33 (5th Cir.),

*cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) (false statements, made in separate documents, constitute separate crimes under 18 U.S.C. § 1001). Though apparently repeating the same falsehood set forth in the first disclosure report, the falsity of the second disclosure report further impaired the Ethics Committee's ability to perform its oversight role. Thus, it constituted an additional violation of 18 U.S.C. § 1001. *See United States v. Salas–Camacho,* 859 F.2d 788, 791 (9th Cir.1988) (multiplicitous counts are permissible for false statements where later falsehoods further impaired operations of government). Therefore, I deny the Defendant's Motion to Dismiss as multiplicitous either Counts Seven or Eight.

■ Finally, I find that the Defendant has failed to show selective prosecution. Contrary to the Defendant's assertions, there is no credible evidence to support the view that the United States chose to prosecute Congressman Mavroules, and not others, for partisan reasons. Under the past two Republican Administrations, elected officials from both parties have been indicted and prosecuted. Moreover, the Defendant has not succeeded in showing that there are other similarly situated elected officials that the United States has suspiciously demurred from prosecuting. Therefore, I also deny the Defen-

*Apparel Art* involved a civil RICO claim, and, therefore, it was appropriate for that court to look beyond the facial validity of the complaint to determine if a pattern of racketeering activities could reasonably be claimed.

As the Magistrate in this case noted, however, there are endemic safeguards in the criminal system against baseless RICO charges, namely the filters of the grand jury and the prosecutor's office. To a large degree, these protections ensure that criminal RICO charges have some reasonable factual foundation. Thus, where a criminal RICO count is properly pled in the indictment, as here, there is generally no basis for this court to explore further the sufficiency of the evidence that underlies that count. Moreover, respect for the proper separation of powers between the executive and judicial branches of government cautions me against testing the factual basis for indictments, except in instances of glaring abuse. On this basis, I find *Apparel Art* easily distinguishable from the present case, and I leave the indictment undisturbed.

2. In his motion to dismiss the RICO charge, the Defendant moved, in the alternative, to strike that portion of the charge relating to an alleged,

unlawful agreement reached in 1979 between the Defendant and Bob Brest. The Defendant argued that this alleged agreement is too unrelated with the other charged predicate acts to be part of a pattern of racketeering activities. As stated above, however, I find that the indictment properly alleges the requisite elements of a RICO violation. Therefore, I reject the Motion to Strike.

3. The Defendant argues that any conspiracy charge is barred by the statute of limitations. The central issue here is whether the conspiracy continued into the limitations period because of a W–2 received by the Defendant's brother in January, 1988. Because a conspiracy does not end until the economic benefits of the conspiracy have been realized, *United States v. Fitzpatrick,* 892 F.2d 162, 167 (1st Cir.1989), there remains a factual question as to whether the W–2 constituted an economic benefit to the Defendant's brother, an alleged co-conspirator. Such a question is properly reserved for the factfinder to resolve.

dant's Motion to Dismiss Counts One through Sixteen for selective prosecution.

In conclusion, I find that the indictment is properly constructed, clearly stating the specific charges for which the Defendant has been called to trial. I also find that the indictment properly notifies the Defendant of the charges, allowing him to prepare a defense to those charges. Thus, the Magistrate's Reports and Recommendations are accepted and approved as an order of this court.

SO ORDERED.

## REPORT AND RECOMMENDATION ON DEFENDANT NICHOLAS MAVROULES' MOTION TO DISMISS COUNT SEVENTEEN, CONSPIRACY TO COMMIT EXTORTION (# 53)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

The defendant seeks dismissal of Count 17 charging conspiracy to commit extortion on four grounds, i.e., (1) the charge is barred by the statute of limitations, (2) the indictment fails "... to expressly [sic] allege any agreement whatsoever between the alleged conspirators," (3) it "... fails to allege the requisite nexus between the alleged conspiracy to extort and interstate commerce," and (4) it "... fails to set forth the essential elements of a conspiracy to commit extortion by wrongful use of fear."

### II. THE LEGAL STANDARD

■ The motion is without merit for essentially the same reasons the Motion to Strike and/or Dismiss the Rico Count (# 55) is without merit. As the Court wrote in the case of *United States v. Habicht*, 766 F.Supp. 22, 25–27 (D.Mass., 1991):

> ... the defendants' thesis hinges on an erroneous equation of what the Government must charge in the indictment with what the Government must prove at trial. The allegations of an indictment are presumed to be true for the purposes of assessing sufficiency, and inquiry into whether the Government can prove its case at trial is inappropriate at this stage. *Boyce*

*Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 & n. 16, 72 S.Ct. 329, 332 & n. 16, 96 L.Ed. 367 (1952). *See United States v. Campbell Hardware, Inc.*, 470 F.Supp. 430, 433 (D.Mass., 1979).

In order for a criminal indictment to be sufficient, all that is required is that the indictment "... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(1), Fed.R.Crim.P. In the words of the Supreme Court:

> ... [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States*, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861] (1932); *United States v. Debrow*, 346 U.S. 374 [74 S.Ct. 113, 98 L.Ed. 92] (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth the offence intended to be punished." *United States v. Carll*, 105 U.S. 611, 612 [26 L.Ed. 1135] (1882).

*Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

Put another way, the issue is "... whether [the indictment] fairly identifies and describes the offense." *United States v. Allard*, 864 F.2d 248, 250 (1 Cir., 1989).

### III. THE TEXT OF COUNT SEVENTEEN

Count 17 reads as follows:

1. Beginning at a time unknown but at least by in or about 1973, **and continuing to in or about January, 1988,** in the District of Massachusetts,

### NICHOLAS MAVROULES,

defendant herein, who in 1973 was the Mayor of Peabody, did knowingly, willfully and unlawfully **conspire with others known and unknown to the grand jury,**

to obtain and cause to be obtained from the proprietor of Kappy's Liquors, Ralph Kaplan, approximately $25,000 in United States currency and the guarantee of employment for his brother George Mavroules, in return for defendant NICHOLAS MAVROULES', promise to facilitate the acquisition of a liquor license for a liquor store to be located in Peabody, Massachusetts with the consent of the proprietor of Kappy's Liquors, Ralph Kaplan, **by wrongful use of fear of economic harm** and under color of official right, and **did thereby obstruct, delay and affect interstate commerce.**

## GENERAL ALLEGATIONS

2. In or about 1973, Ralph Kaplan owned and operated a chain of liquor stores located in various cities and towns in proximity to Peabody, Massachusetts.

3. At defendant NICHOLAS MAVROULES' request, Ralph Kaplan was introduced to defendant NICHOLAS MAVROULES.

4. Defendant NICHOLAS MAVROULES then offered to Ralph Kaplan the opportunity to purchase a liquor license in Peabody, Massachusetts.

5. Ralph Kaplan expressed an interest in purchasing the liquor license but stated that he needed a location in which to operate a liquor store.

6. Defendant NICHOLAS MAVROULES, along with an attorney, then undertook to locate suitable facilities for a liquor store and proposed a number of sites to Ralph Kaplan.

7. A short time later, the liquor license application of Ralph Kaplan was approved by the Peabody Liquor Licensing Board.

8. In or about 1973, NICHOLAS MAVROULES met with Ralph Kaplan, and others to discuss the progress of Ralph Kaplan's liquor license application before the Alcoholic Beverages Control Commission (ABCC) of the Commonwealth of Massachusetts and offered to provide help to Ralph Kaplan before the ABCC.

9. At that meeting, NICHOLAS MAVROULES took Ralph Kaplan aside privately and asked to become a partner with Ralph Kaplan in the new liquor store. Ralph Kaplan refused the request.

10. Defendant NICHOLAS MAVROULES, in lieu of becoming Kaplan's partner, then demanded a lump sum payment of approximately $40,000 in cash from Ralph Kaplan over and above the $35,000 paid by Kaplan and others to the previous license holder to purchase the liquor license.

11. When Ralph Kaplan stated that he could not afford that amount of money, defendant NICHOLAS MAVROULES agreed to accept a $25,000 cash payment from Ralph Kaplan.

12. In addition, as a further condition of having facilitated the acquisition of the liquor license, defendant NICHOLAS MAVROULES required that Ralph Kaplan hire his brother George Mavroules, to work at the liquor store in Peabody, Massachusetts, once it opened for business, and further demanded that Ralph Kaplan pay his brother George Mavroules a fair wage.

13. Ralph Kaplan agreed to these terms.

14. Some time later, Ralph Kaplan paid NICHOLAS MAVROULES $25,000 in cash and hired George Mavroules as demanded by defendant NICHOLAS MAVROULES.

15. In order to pay George Mavroules a fair wage as required by defendant NICHOLAS MAVROULES, Ralph Kaplan and others paid George Mavroules a salary. In addition, Kaplan made a weekly payment of $100 in cash which was unreported to the Internal Revenue Service by Kappy's Liquors.

16. This method of payment continued until in or about March, 1987, when George Mavroules retired from Kappy's Liquors.

17. In or about May, 1987, Kappy's Liquors paid to George Mavroules a lump sum retirement benefit.

18. In or about January, 1988, as it had done each year of his employment, Kappy's Liquors issued a Form W–2 Wage and

Tax statement to George Mavroules which reflected the payment of his regular salary but which did not report to the Internal Revenue Service the weekly payment of $100 to George Mavroules in the form of cash.

All in violation of Title 18, United States Code, Section 1951.

Emphasis added.

## IV. THE STATUTE OF LIMITATIONS

▮ The charge of conspiracy under 18 U.S.C. § 1951 does not require proof of an overt act. *United States v. Tormos–Vega*, 959 F.2d 1103, 1115 (1 Cir., 1992). "In the case of non-overt act conspiracies, the statute of limitations is satisfied if the alleged conspiracy continued into the limitations period." *United States v. Maling*, 737 F.Supp. 684, 690 (D.Mass., 1990)[1] citing *United States v. Butler*, 792 F.2d 1528, 1532 (11 Cir.), *cert. denied*, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). In the case of a conspiracy which does not require proof of overt acts, ". . . the conspiracy continues as long as its purposes have neither been abandoned or accomplished." *United States v. Torres Lopez*, 851 F.2d 520, 525 (1 Cir., 1988) citing *United States v. Coia*, 719 F.2d 1120, 1124 (11 Cir., 1983). In the *Maling* case, Senior Judge Caffrey held that:

> . . . [W]here an indictment is valid on its face, a court should not inquire into the sufficiency of evidence supporting a grand jury indictment. *United States v. Maceo*, 873 F.2d 1, 2–3 (1st Cir.), *cert. denied* 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). *See also Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

*United States v. Maling, supra*, 737 F.Supp. at 690.

▮ The indictment in the instant case was returned on August 27, 1992. The indictment alleges that the conspiracy continued to in or about January, 1988, a date well within the five-year limitations period. Under First Circuit law, the indictment is sufficient and no further inquiry is warranted on this ground of the motion to dismiss. Obvi-

ously, at trial, the Government, in order to prevail on Count 17, will be required to prove beyond a reasonable doubt that the conspiracy did continue beyond August 27, 1987. *United States v. Walsh*, 928 F.2d 7, 11–12 (1 Cir., 1991).

The cases cited by the defendant are largely beside the point. In *United States v. Roth*, 669 F.Supp. 1386 (N.D.Ill., 1987), an indictment was returned which contained a count charging a conspiracy to violate the Hobbs Act. The original indictment was returned within the limitations period. A superseding indictment was returned after the limitations period expired. The Court dismissed that count in the superseding indictment and permitted the case to go forward on the count in the original indictment because the superseding indictment had broadened the scope of the crime originally charged without alleging that the conspiracy extended beyond that which was originally charged. *United States v. Roth, supra*, 669 F.Supp. at 1389–90.

The case of *United States v. Nedza*, 880 F.2d 896 (7 Cir., 1989), is completely inapposite. It deals with a substantive violation of the Hobbs Act, not with a conspiracy. The language upon which defendant relies discusses when a substantive violation of the statute is complete. *Id.* at 902. As indicated *supra*, the law with respect to a conspiracy is different.

In *United States v. Doherty*, 867 F.2d 47 (1 Cir., 1989) and *United States v. Fitzpatrick*, 892 F.2d 162 (1 Cir., 1989), the First Circuit was reviewing the **evidence** at the trials below to determine if overt acts occurred within the limitations period. They do not deal with pre-trial motions to dismiss. The *Doherty* case dealt with a conspiracy to steal and sell civil service exams so that the conspirators would know the questions beforehand, receive the highest scores on the exams, and thus obtain the civil service jobs and receive salary payments incident to the new positions. The Government maintained that each receipt of the salary payments constituted an overt act, and since there were salary payments within the limitations period, the charge was not time-barred. The First Cir-

---

1. Aff'd *sub nom. United States v. Richard*, 943 F.2d 115 (1 Cir., 1991).

cuit disagreed, noting that mere receipt of salary payments would extend the statute of limitations indefinitely. *United States v. Doherty, supra,* 867 F.2d at 61–62. However, the First Circuit also wrote:

> ... [W]here receiving the payoff merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions, such as receiving salary payments, *and* there is no **evidence** that any concerted activity posing the special societal dangers of conspiracy is still taking place, we do not see how one can reasonably say that the conspiracy continues. Rather, in these latter circumstances, one would ordinarily view that receipt of payments as the "result" of the conspiracy.

*Id.* at 61 (first emphasis in the original; second emphasis added).

Thus, the issue raised by the *Doherty* case, while perhaps relevant after the Government has finished its case-in-chief and the evidence presented on the issue is complete, is simply not a proper basis for a motion to dismiss before trial for the simple reason that whether or not there will be "**evidence** that any concerted activity posing the special societal dangers of conspiracy is still taking place" is not yet known. *See United States v. Keohane,* 918 F.2d 273 (1 Cir., 1990).

In its reply brief, the defendant cites two district court decisions from courts outside of the First Circuit in support of his position. As to the first, *United States v. BiCoastal Corp.,* No. 92–CR–261 (N.D.N.Y., 12/14/92), its precedential value, at the stage of the proceedings at which that case is at present, is very doubtful. While it is true that an indictment charging conspiracy was dismissed pre-trial on that date, the Clerk for the Northern District of New York, upon inquiry from the undersigned's office, reported that the government had filed a motion to vacate the dismissal on December 28, 1992, a hearing was held on January 22, 1993, and on February 1, 1993, the district judge ordered that further briefs be filed. The matter remains *sub judice* as of this writing.

Passing the status of the decision, the case appears inapposite. First, the excerpt from the district judge's oral opinion would tend to indicate that the conspiracy charged was not conspiracy to commit extortion, since the judge speaks of "overt acts" alleged in the indictment. *See* p. 51. Second, the case deals with the defense of withdrawal from a conspiracy, the judge finding that the defendants had, through affidavits, made a *prima facie* showing of withdrawal from the conspiracy before the limitations period and the Government had no evidence with which to sustain its burden of proving that there had not been a withdrawal. *See* pp. 60–1. In the instant case, no defense of withdrawal has been asserted, and, consequently, no *prima facie* case of withdrawal has been made out.

The February 6, 1992 decision of the Court in *United States v. Van Engel,* No. 91–CR–5 (E.D.Wis.) has not been published and has not been presented to the Court. The December 21, 1992 decision, which is reproduced at 1992 U.S.Dist. LEXIS 19556, merely refers to the earlier decision in a cryptic fashion. The citation is useless; I shall not consider it.

I end where I began. The indictment is sufficient to require the defendant to stand trial on Count 17. Whether the evidence offered in support of the charge will be sufficient is not a question to be resolved on a motion to dismiss the charge before trial.

## V. DOES COUNT 17 ALLEGE AN AGREEMENT?

The short answer to this question is surely "yes." Count 17 alleges that the defendant did "... knowingly, wilfully and unlawfully **conspire with others known and unknown to the grand jury** ..." to violate the Hobbs Act. The "others known" have been identified and include at least one person who is not a "victim" of the extortion. Whether the evidence will support the charge that the defendant conspired with the named non-victim or whether the "victims" may also be considered co-conspirators may be determined after the Government has presented its case-in-chief; it is not to be determined on a motion to dismiss a count in an indictment if the count sufficiently alleges the offense charged. Count 17 does so.

**1116**

## VI. NEXUS TO INTERSTATE COMMERCE

Defendant claims that Count 17 "... fails to allege a sufficient nexus to interstate commerce." Certainly a nexus to interstate commerce is alleged. The indictment avers that the defendant "... did thereby obstruct, delay and affect interstate commerce." The issue is whether the allegation is sufficient, or, put another way, whether a "sufficient" nexus is alleged.

Once again, defendant cites cases in which courts have found that the evidence offered at trial was insufficient to prove the necessary interstate commerce nexus. *United States v. Mattson*, 671 F.2d 1020 (7 Cir., 1982); *United States v. Buffey*, 899 F.2d 1402 (4 Cir., 1990); *United States v. Kaye*, 593 F.Supp. 193 (N.D.Ill., 1984); *United States v. Blair*, 762 F.Supp. 1384 (N.D.Cal., 1991). The only case which is cited in support of a pre-trial motion to dismiss is *United States v. Hooker*, 841 F.2d 1225 (4 Cir., 1988) in which no allegation whatsoever respecting an effect on interstate commerce was included in the indictment. That case is manifestly inapposite.

 The allegation in the instant indictment is plainly sufficient to withstand a motion to dismiss. No additional allegations are required. In fact, at trial, the Government need only show that the extortion had a *de minimis* effect on interstate commerce. *United States v. Hathaway*, 534 F.2d 386, 396–97 (1 Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Jarabek*, 726 F.2d 889, 900–01 (1 Cir., 1984).

## VII. DOES THE INDICTMENT ADEQUATELY ALLEGE CONSPIRACY TO COMMIT EXTORTION THROUGH WRONGFUL USE OF FEAR?

The indictment clearly charges the defendant with conspiring to obtain money "by wrongful use of fear of economic harm." Yet defendant claims that "[w]holly lacking from the indictment is any mention of the essential elements of the offense charged." Motion, p. 19. One wonders, in vain, what is missing.

The act of obtaining money "by wrongful use of fear of economic harm" is itself an element of the offense. Does the defendant claim that there are sub-elements of the basic elements of a crime? The argument is puzzling indeed.

Once again the defendant cites no law which would support a dismissal given the allegation that defendant conspired to obtain money "by wrongful use of fear of economic harm." Instead, he cites cases reviewing evidence after trial. *United States v. Garcia*, 907 F.2d 380 (2 Cir., 1990); *United States v. Capo*, 817 F.2d 947 (2 Cir., 1987); *United States v. Sturm*, 671 F.Supp. 79 (D.Mass., 1987). Whether the evidence at trial is sufficient to meet the Government's burden of proof is not the issue at this stage of the proceedings; the allegations of the indictment are sufficient.

## VIII. RECOMMENDATION

For all of the aforesaid reasons, I RECOMMEND that Defendant Nicholas Mavroules' Motion to Dismiss Count Seventeen, Conspiracy to Commit Extortion (# 53) be DENIED.

## IX. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13; 14 (1 Cir., 1983). *See also*

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

February 11, 1993.

REPORT AND RECOMMENDATION ON DEFENDANT NICHOLAS MAVROULES' MOTION TO STRIKE AND DISMISS THE RICO COUNT (# 55)

COLLINGS, United States Magistrate Judge.

The defendant seeks dismissal of the RICO count because "[t]he three predicate acts as charged in the Indictment.... fail to establish an essential element of a RICO violation—'a pattern of racketeering activity'." Motion, p. 1. This basic challenge has two parts. The first is the claim that the predicate acts involving the "free use of an automobile" must be stricken because they are "too *un*related and too *dis*connected from the other predicate acts" to meet the "relatedness" element of a "pattern" under RICO. Motion, pp. 1–2. The second part is that once the predicate acts involving the "free use of an automobile" are stricken, the two remaining predicate acts:

> [F]ail to establish the 'continuity' aspect of a pattern [because] [t]hese schemes, allegedly conceived and completed during the summer months of 1985, are *too closely* connected in time such that they cannot amount to or pose a threat of continued criminal activity.

Motion, p. 2.

 In my judgment, these claims do not support a motion to dismiss under the law of this Circuit. *See United States v. Winter,* 663 F.2d 1120, 1136 (1 Cir., 1981), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983); *United States v. Angiulo,* 847 F.2d 956, 964 (1 Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110 (1988); *United States v. Habicht,* 766 F.Supp. 22, 25–27 (D.Mass., 1991). The same rules of pleading apply to a RICO charge as to other criminal charges; there is no requirement that evidentiary matters be pleaded in any greater detail in a RICO count than non-RICO counts. The Government must allege the essential elements of the crime charged. Whether those elements

can be proved at trial is another matter not properly considered on a motion to dismiss. As the Court wrote in the *Habicht* case:

> ... the defendants' thesis hinges on an erroneous equation of what the Government must charge in the indictment with what the Government must prove at trial. The allegations of an indictment are presumed to be true for the purposes of assessing sufficiency, and inquiry into whether the Government can prove its case at trial is inappropriate at this stage. *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 343 & n. 16, 72 S.Ct. 329, 332 & n. 16, 96 L.Ed. 367 (1952). *See United States v. Campbell Hardware, Inc.,* 470 F.Supp. 430, 433 (D.Mass., 1979).

*United States v. Habicht, supra,* 766 F.Supp. at 27–28.

Applying the applicable test for sufficiency of an indictment, Count I (the RICO count against the defendant in this case) is sufficient. Paragraph 2 identifies the "enterprise." Paragraph 3 alleges that from January, 1979 to the date of the indictment, the defendant was "associated with [the] enterprise ... [and that] the activities of [the enterprise] affected interstate commerce." Paragraph 3 further alleges that during the period, the defendant conducted and participated in the enterprise

> ... through a pattern of racketeering activity ... consisting of multiple acts of demanding, seeking, soliciting, accepting, receiving and agreeing to accept and receive illegal gratuities ... as well as acts of extortion.

The pattern of racketeering activity is detailed and nine racketeering acts are set forth.

Accepting the allegations of the indictment as true, as must be done in determining sufficiency, the indictment is sufficient. It is true that at trial, the Government must offer **evidence** sufficient for the jury to find beyond a reasonable doubt that "a pattern of racketeering activity" has been **proved**. But "continuity" or "relatedness" need not be alleged. As the First Circuit has noted:

> The [Supreme] Court itself has focused on "relatedness" and "continuity" as useful

tools in proving a pattern of racketeering. *Id. [H.J., Inc., v. Northwestern Telephone Co.,* 492 U.S. 229 at 239, 109 S.Ct. 2893] at 2900 [106 L.Ed.2d 195 (1989) ].

\* \* \* \* \* \*

It follows, of course, that continuity is not an element of a RICO offense, *strico senso,* but it is nevertheless a necessary characteristic of the **evidence** used to prove the existence of a pattern.

*United States v. Boylan,* 898 F.2d 230, 250 (1 Cir.); *cert. denied,* 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990) (emphasis added).

The defendant has cited no case from this Circuit in which an indictment that alleges all the elements of a RICO charge has been dismissed before trial because of a failure to allege "continuity" or "relatedness" or because a Court has found that the pleading, although sufficiently alleging the elements of a RICO charge, is insufficient as a matter of law because, from the allegations themselves, "continuity" and/or "relatedness" cannot be proved. In his reply memorandum, he does cite two criminal cases from district courts in the Fourth Circuit, i.e., *United States v. Berlin,* 707 F.Supp. 832 (E.D.Va., 1989) and *United States v. Crysopt Corporation,* 781 F.Supp. 375 (D.Md., 1991). In my judgment, neither case represents the law of the First Circuit. Moreover, each treats criminal indictments as if they were civil RICO complaints and cites civil RICO precedents from the Fourth Circuit as support for dismissal of the RICO count of a criminal indictment. As indicated *infra,* I am of the opinion that a criminal indictment containing a RICO charge is not subject to the same type of analysis to which a civil RICO complaint would be subject on a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.

To be sure, the defendant does cite civil cases from this Circuit in which complaints alleging civil RICO violations have been dismissed prior to trial pursuant to Rule 12(b)(6), Fed.R.Civ.P.[1] I do not find the reasoning of these cases to be applicable to a criminal indictment charging a RICO offense.

The difference between the two situations is marked. An indictment charging a RICO offense cannot be returned unless a Grand Jury has found probable cause to believe that the defendant has committed the offense and the United States Attorney concurs in the indictment. In a civil case, all that is needed to bring a RICO claim against another party is to file and serve a complaint. Thus, complaints alleging a civil RICO violation must be reviewed and " ... particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1 Cir., 1991) (citations omitted). In addition, civil RICO complaints are subject to dismissal pursuant to Rule 9(b), Fed.R.Civ. P., if predicate acts based on fraud are not pleaded with particularity. *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42–43 (1 Cir., 1991).

There is no analogous requirement for criminal indictments; all that is required is that the indictment " ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(1), Fed.R.Crim.P. In the words of the Supreme Court:

> ... [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States,* 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861] (1932); *United States v. Debrow,* 346 U.S. 374 [74 S.Ct. 113, 98 L.Ed. 92] (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth the offence intended to be punished." *United States v. Carll,* 105 U.S. 611, 612 [26 L.Ed. 1135] (1882).

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

---

1. I note that the defendant's citation to *Trundy v. Striunsky,* an unpublished First Circuit case, is in direct violation of First Circuit Local Rule 36.-2(b)(6) and that the prohibition against citation in unrelated cases is noted in WESTLAW at the place where the opinion is reproduced. The conclusion is inescapable that the defendant's counsel knowingly violated the First Circuit rule. I shall not consider the citation in this Report and Recommendation.

Put another way, the issue is "... whether [the indictment] fairly identifies and describes the offense." *United States v. Allard*, 864 F.2d 248, 250 (1 Cir., 1989). The indictment in this case plainly does so.

In conclusion, I rule that, under Rule 7(c)(1), Fed.R.Crim.P., and precedent in both the circuit and district courts in this Circuit, Count I of the indictment in the instant case is entirely sufficient. Defendant's arguments about lack of "continuity" and "relatedness" should be reserved for trial, particularly in a motion pursuant to Rule 29, Fed.R.Crim.P., and if that fails, in argument to the fact finder. Accordingly, I RECOMMEND that Defendant Nicholas Mavroules' Motion to Strike and/or Dismiss the Rico Count (# 55) be DENIED.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

February 11, 1993.

## REPORT AND RECOMMENDATION ON THE MOTION TO DISMISS COUNT SEVEN OR EIGHT OF THE INDICTMENT AS MULTIPLICITOUS (# 57)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

The defendant seeks dismissal of either Count 7 or 8 charging violations of 18 U.S.C. § 1001 on May 15, 1990 and June 11, 1990 respectively on the grounds that the two charges are multiplicitous.

### II. THE TEXT OF COUNT FOUR THROUGH NINE

Counts 4 through 9 read as follows:

On or about the dates listed below, in the District of Massachusetts and elsewhere, NICHOLAS MAVROULES, defendant herein, **did willfully and knowingly make and use and cause to be made and used a false writing and document** knowing it to contain a false, fictitious and fraudulent statement and entry as to material facts in a matter within the jurisdiction of the United States House of Representatives, a department and agency of the United States, in that in his financial disclosure report for the calendar years 1986 through and including 1990, made pursuant to the Ethics in Government Act of 1978, Public Law 95–521, and submitted to the United States House of Representatives, defendant NICHOLAS MAVROULES excluded his receipt of the free use of certain automobiles as listed below, whereas, as the defendant NICHOLAS MAVROULES then knew, he had received the free use of those automobiles during the reporting period.

| COUNT | DATE | REPORTING PERIOD | UNREPORTED AUTOMOBILES |
|---|---|---|---|
| 4 | 5/13/87 | 1986 | 1985 Buick LeSabre |
| | | | 1986 Buick Park Avenue |
| 5 | 5/15/88 | 1987 | 1986 Buick Park Avenue |
| 6 | 5/10/89 | 1988 | 1986 Buick Park Avenue |
| | | | 1989 Chevrolet Caprice Brougham |
| 7 | 5/15/90 | 1989 | 1989 Chevrolet Caprice Brougham |
| 8 | 6/11/90 | 1989 | 1989 Chevrolet Caprice Brougham |
| 9 | 5/15/91 | 1990 | 1989 Chevrolet Caprice Brougham |

All in violation of Title 18, United States Code, Sections 1001 and 2.

Emphasis supplied.

## III. THE GOVERNMENT'S REPRESENTATION OF THE EVIDENCE

As is obvious, Counts 7 and 8 both deal with two financial disclosure forms filed for the year 1989 within a month of each other. In its Response,[1] the government refers to "Report I" as the form filed on May 15, 1990 and "Report II" as the form filed on June 11, 1990. The government further asserts the following respecting the evidence expected to be introduced at trial on Counts 7 and 8:

> The government intends to offer evidence that, after the filing of Report I, the House of Representatives Committee on Standards of Official Conduct ("Standards Committee") urged the defendant to file a more complete disclosure statement. Apparently in response to that request, the defendant prepared and filed Report II in which he, for the first time, disclosed the value of his holdings in an investment loan partnership known as 626 Lynnway Associates. (This partnership has no factual relation to any of the cars he was provided free of charge). In both Report I and Report II, however, the defendant failed to indicate that he had received the free use of a 1989 Chevrolet automobile from a local dealership during the previous calendar year.

Response at pp. 2–3.

## IV. THE LEGAL STANDARD

■ The classic test for determining whether two charges are multiplicitous has been set forth by the First Circuit as follows:

> The test of whether an indictment is multiplicious [sic] is straightforward. "[W]here the same act or transaction con-

stitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

*United States v. Serino*, 835 F.2d 924, 930 (1 Cir., 1987) (other citations omitted), *See also United States v. Faulhaber*, 929 F.2d 16, 19 (1 Cir., 1991).

Applying this test, the counts are plainly not multiplicitous. Count 7 requires proof of the filing of Report I; Count 8 requires proof of the filing of Report II. Proof of the filing of Report I is not necessary for conviction on count 8; proof of the filing of Report II is not necessary for a conviction on Count 7. This rationale has been the basis for finding that two charges under 18 U.S.C. § 1001 which involve the submission of separate false documents or writings are not multiplicitous. The Fifth Circuit has held that:

> Where false statements are made in distinct and different documents requiring different proof as to each statement, the filing of each false document constituted a crime, and each filing may be alleged in a separate count of the indictment. *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir.), *cert. denied* 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984) (interpreting 18 U.S.C. § 1014, which makes it an offense to knowingly make false statements to a federally insured bank). In [this] case [the defendant] falsely represented her name on two different documents. Each misrepresentation constitutes a crime under Section 1001 because the proof of each count was contained in a separate document. Each count therefore required evidence

---

1. Government's Response to Defendant's Motion to Dismiss Count Seven or Eight of the Indict-
ment as Multiplicitous (# 76) (hereinafter, "Response").

not necessary to prove the other count. [The defendant] attempts a distinction by pointing out that in this case the two false documents were presented in the same transaction and the same falsity in contained in both documents. This distinction fails. [citing *United States v. Miranne*, 688 F.2d 980, 986 (5th Cir.1982); *Bins v. United States*, 331 F.2d 390, 393 (5th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964).]

*United States v. Guzman*, 781 F.2d 428 (5 Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).

Other courts have reached the same conclusion. The Tenth Circuit, faced with a claim based on the fact that the false documents were all submitted at one time in support of one tax return, wrote:

> While in another clause § 1001 uses the plural terms "fraudulent statements or representations," in the clause we are concerned with the statute turned to the singular terms—"any false writing or document ..." We feel the statute aims at the making or using of each "false writing or document" and intends the wrong connected with each to be a separate offense.

*United States v. Bettenhausen*, 499 F.2d 1223, 1234 (10 Cir., 1974). *See also United States v. Grossman*, 154 F.Supp. 813, 818 (D.N.J., 1957).

The Ninth Circuit has also interpreted that part of 18 U.S.C. § 1001 dealing with "any false writing or document" in the same manner. *United States v. Matanky*, 482 F.2d 1319, 1322 (9 Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *United States v. UCO Oil Co.*, 546 F.2d 833, 838–39 (9 Cir.), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Bennett*, 702 F.2d 833, 835 (9 Cir., 1983).

In my opinion, this body of law is determinative of the defendant's motion, since Counts 7 and 8 charge the defendant with, on two separate occasions, "mak[ing] and us[ing] and caus[ing] to be made and used a false writing and document ...", not with making "false and fraudulent misrepresentations." 18 U.S.C. § 1001.

## V. DEFENDANT'S POSITION

Defendant, in support of the motion, cites a number of cases which either deal with the "false and fraudulent representation" clause of § 1001, or with perjury or false statements before the Grand Jury, or other similar statutes.[2] None of the cases deal with making "any false or fraudulent writing" and are, accordingly, simply not applicable to the charges which are contained in Counts 7 and 8.

The cases dealing with multiple counts of "false or fraudulent representations" under 18 U.S.C. § 1001 all concern the situation in which the same false or fraudulent misrepresentation is made more than once. *United States v. Segall*, 833 F.2d 144 (9 Cir., 1987), the defendant made three allegedly false oral statements to Customs Officers. In *United States v. Olsowy*, 836 F.2d 439 (9 Cir., 1987), *cert. denied*, 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988), the defendant made two allegedly false oral statements to the Secret Service. In *United States v. Salas–Camacho*, 859 F.2d 788 (9 Cir., 1988) is similar to the *Segall* case except only two allegedly false oral statements were made. None of the cases involved allegations of use of a false or fraudulent writing. In these cases, the Ninth Circuit adopted a two-part test to determine whether the statements could be the subject of separate criminal charges.

> The first is whether a declarant was asked the same question and gave the same answer. The second element is whether later false statements further impaired the operations of the government.

*United States v. Salas–Camacho, supra*, 859 F.2d at 791. The test has been applied by the Eighth Circuit[3] and the District Court

---

2. The defendant cites *United States v. Roshko*, 969 F.2d 1 (2 Cir., 1992), Motion, p. 5. The citation is incorrect. There are two *Roshko* cases published in 969 F.2d.; the *Roshko* case which stands for the proposition for which the defendant cited it is reported at 969 F.2d 9 at p. 12.

3. *United States v. Trent*, 949 F.2d 998, 999–1000 (8 Cir., 1991).

for the District of Columbia[4] and has been recognized by the Second Circuit[5] in cases involving prosecutions under 18 U.S.C. § 1001 for making false statements and misrepresentations. However, the defendant has cited no case in which the test has ever been applied to charges under § 1001 of using a false or fraudulent writing.

Courts have wrestled with the issue of multiplicity in cases where several false statements to a grand jury have been the subject of separate counts charging violations of 18 U.S.C. § 1621 or § 1623. *Compare Gebhard v. United States*, 422 F.2d 281, 289–90 (9 Cir., 1970) with *United States v. De La Torre*, 634 F.2d 792, 794–95 (5 Cir., 1981). The same type of analysis has been applied; again, none of those cases concerned charges under § 1001 of using a false or fraudulent writing.

Lastly, the defendant attempts to make much of the fact that the First Circuit has found multiplicity when several submissions of false documents to a bank are charged in separate counts under 18 U.S.C. § 1344 which prohibits "knowingly executes … a scheme or artifice to defraud." *United States v. Lilly*, 983 F.2d 300, 302–305 (1 Cir., 1992). The government attempted to analogize the bank fraud statute with the mail fraud statute, 18 U.S.C. § 1341. The Court, in rejecting the argument, made a careful distinction between the two statutes, writing that:

> … [T]he mail fraud statute criminalizes certain specifically enumerated actions when taken in furtherance of a scheme, while the bank fraud statutes criminalizes only the execution of the scheme itself.

*Id.* at p. 304.

That part of 18 U.S.C. § 1001 which punishes "making or using any false writing or document" resembles the mail fraud statute where multiple mailings in furtherance of a scheme can be charged as separate offenses. In short, the *Lilly* case is simply not prece-

dent for finding Counts 7 and 8 of this indictment to multiplicitous.

Defendant does seem to have grasped this crucial distinction between the cases he cites and the actual crime charged in Counts 7 and 8. In his Motion, Etc. (# 57), he drops a footnote[6] noting the distinction and arguing that 18 U.S.C. § 1001 is ambiguous. The argument is novel. If it had any merit, one wonders why, in all the prosecutions under § 1001, it has not been made before. The distinction made in the cases is plain and well-settled: two identical oral statements may indeed be the same crime under § 1001. The submission of two different false writings or documents, even if false or fraudulent in the same respect, are not.

## VI. RECOMMENDATION

For all of the aforesaid reasons, I RECOMMEND that Defendant's Motion to Dismiss Count Seven or Eight of the Indictment as Multiplicitous (# 47) be DENIED.

## VII. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983). *See also*

---

**4.** *United States v. Clarridge*, 811 F.Supp. 697, 701–703 (D.D.C., 1992).

**5.** *United States v. Roshko*, 969 F.2d 9, 12 (2 Cir., 1992).

**6.** Footnote 4, p. 8.

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

February 12, 1993.

REPORT AND RECOMMENDATION ON DEFENDANT NICHOLAS MAV-ROULES' MOTION TO DISMISS COUNTS ONE THROUGH SIXTEEN BASED ON THE GOVERNMENT'S SELECTIVE PROSECUTION (# 54)

COLLINGS, United States Magistrate Judge.

On August 27, 1992, a federal grand jury in the District of Massachusetts returned a seventeen-count indictment against Nicholas Mavroules ("Mavroules") who, from January of 1979 through January of this year, was a member of the United States House of Representatives representing the Sixth Congressional District in the Commonwealth of Massachusetts. In Counts one through sixteen of the indictment, Mavroules is alleged to have violated the RICO statute, 18 U.S.C. § 1962(c) (Count One); demanded and accepted things of value personally for and because of official acts performed in violation of 18 U.S.C. § 201(c)(1)(B) (Counts Two, Three and Sixteen); knowingly and willfully submitted false and fraudulent financial disclosure reports required by the Ethics in Government Act in violation of 18 U.S.C. §§ 1001 and 2 (Counts Four, Five, Six, Seven, Eight and Nine); and willfully filed false individual income tax returns in violation of 26 U.S.C. § 7206(1) (Counts Ten, Eleven, Twelve, Thirteen, Fourteen and Fifteen).[1]

Mavroules seeks the dismissal of the first sixteen counts of the indictment on the grounds of selective prosecution, and further requests that an evidentiary hearing be scheduled to explore the issue. This dispositive motion has been referred to the undersigned by the District Judge to whom this case is assigned for the issuance of findings and a recommendation as to disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Following a hearing held on February 8, 1993, the motion to dismiss is ripe for decision.

THE LAW

■ It is firmly established in our criminal jurisprudence that prosecutors, on behalf of the Government, have broad discretion in deciding which persons and cases to prosecute. *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *United States v. Bassford,* 812 F.2d 16, 19 (1 Cir.), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987). In articulating the reasons for this latitude of choice, the Supreme Court recognized that:

> [s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Wayte v. United States, supra,* 470 U.S. at 607, 105 S.Ct. at 1530.

While concededly broad, the bounds of prosecutorial discretion are nevertheless "limited by constitutional principles of equal protection and due process, which protect individuals from selective enforcement and prosecution." *United States v. Bassford, supra,* 812 F.2d at 19 (footnote omitted); *United States v. Saade,* 652 F.2d 1126, 1135 (1 Cir.1981) (citations omitted).

■ As an exercise of this broad discretion, a prosecutor's decision to prosecute a particular case is presumptively made in good faith adherence to the law. *United States v. Bassford, supra,* 812 F.2d at 19 (footnote omitted); *United States v. Saade, supra,* 652 F.2d at 1135. When a claim of selective prosecution is advanced, the First Circuit has held that:

> ... in order to overcome the threshold presumption that the prosecutor acted 'in good faith for reasons of sound governmental policy,' *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981); see *Bassford,* 812 F.2d at 19, the defendant must make a *prima facie* demonstration—

---

1. Count Seventeen in which it is alleged that Mavroules conspired to commit extortion in violation of 18 U.S.C. § 1951 is the subject of a separate motion to dismiss. On February 11, 1993, I entered a Report and Recommendation, Etc. (# 93) that that motion be denied.

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and

(2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Union Nacional de Trabajadores,* 576 F.2d 388, 395 (1st Cir.1978) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)).

*United States v. Penagaricano–Soler,* 911 F.2d 833, 837 (1 Cir.1990).

The defendant's burden in establishing this *prima facie* showing has been described as "heavy." *United States v. Saade, supra,* 652 F.2d at 1135. However, if the requisite demonstration is made, the burden shifts to the government to "demonstrate the absence of impermissible considerations in its decision to prosecute." *United States v. Penagaricano–Soler, supra,* 911 F.2d at 838; *United States v. Saade, supra,* 652 F.2d at 1135.

■ The burden of establishing that the selective prosecution claim warrants an evidentiary hearing is lighter. In this instance, the defendant need allege only "sufficient 'facts a) tending to show that [defendant] has been selectively prosecuted, and b) raising a reasonable doubt about the propriety of the prosecution's purpose.' " *United States v. Penagaricano–Soler, supra,* 911 F.2d at 838 (quoting *United States v. Saade,* 652 F.2d 1126, 1135 (1 Cir.1981)); *United States v. Bassford, supra,* 812 F.2d at 19.[2] However, a court may properly deny a request for an evidentiary hearing in the face of the defendant's allegations "[i]f the prosecutor presents 'countervailing reasons' to justify the prosecution." *United States v. Bassford, supra,* 812 F.2d at 19 (footnote omitted); *Unit-*

ed *States v. Penagaricano–Soler, supra,* 911 F.2d at 838 (citation omitted).

## DISCUSSION

In support of his claim that he has been "singled out" for prosecution, the first prong of the two-part selective prosecution test, Mavroules identifies four categories of allegedly similarly situated persons who remain unindicted for the same crimes of which he stands charged. First, specifically with respect to counts ten through fifteen, Mavroules contends that no other politician has been prosecuted under 26 U.S.C. § 7206(1) for failing to report the value of gifts received from constituents as taxable income. As a primary, specific example, the defendant notes that although former President George Bush listed over seventy-five gifts on his 1989 Financial Disclosure Report (see, Defendant Nicholas Mavroules' Motion, # 54, Exh. A), the value of these gifts was not reported on Bush's 1989 tax return (see # 54, Exh. B), and yet the former President has not been charged with subscription to a false tax return. Moreover, the same facts hold true for calendar years 1990 and 1991. (See, # 54, Exhs. C. and D, respectively George Bush's 1991 Public Financial Disclosure Report and 1991 Individual Tax Return). Mavroules avers that Mr. Bush's conduct is identical to that for which he has been indicted.

The government argues that the comparison the defendant attempts to draw between his conduct and that of other politicians, including Mr. Bush, is fatally flawed. According to the allegations of the indictment, Mavroules demanded, sought and received things of value personally (free use of Brest automobiles and a favorable house rental arrangement) for and because of official acts performed by him. It is these things of value, i.e., unlawful gratuities within the meaning of 18 U.S.C. § 201(c), not gifts, that Mavroules allegedly failed to report on his income tax returns. This gift/gratuity distinction alone sets Mavroules apart from his first category of "similarly situated" people.

---

**2.** In its most recent articulation of this standard in the *Penagaricano–Soler* case, it is noted that the First Circuit employed the phrase "sufficient facts" as opposed to the earlier "some facts" found in the *Saade* and *Bassford* decisions. The

abbreviation of the *Saade* quote in the *Penagaricano–Soler* decision in order to insert the modifier "sufficient" presumably was deliberate, and has the effect of somewhat increasing the defendant's burden.

So, too, do the steps Mavroules purportedly undertook to conceal his receipt of the cars. It is alleged in the indictment that the defendant requested of Robert Brest that the lease records and other related documents for the various automobiles be placed in the name of a straw lessee in order to hide Mavroules' receipt and free use of them. Further, in counts four through nine of the indictment, Mavroules is charged with failing to include his receipt of the free use of the vehicles on his annual Ethics in Government Act financial disclosure reports.[3]

In his reply brief, Mavroules notes that the recommendation of a recently issued report regarding the investigation into FBI Director William S. Sessions is that Sessions file amended tax forms and reimburse the government for use of a government limousine and improper use of government funds. The defendant contends that, unlike the Republican-appointed Sessions, he was not afforded the opportunity to file amended taxes or reimburse Brest in lieu of being indicted. However, at this juncture, there is no evidence that the Attorney General has accepted the recommendation with respect to Sessions; the potential for criminal prosecution remains.

Finally, unlike other politicians, Mavroules has been charged in count seventeen of the indictment with conspiracy to commit extortion. Although the defendant seeks to have this count dismissed on other grounds, the conspiracy charge is not subject to a claim of selective prosecution. Having decided to prosecute that violation of the law, it is surely within the government's broad discretion to consider all the facts and circumstances of a situation and to prosecute additional charges that, standing alone, may not have been pursued.

For all these reasons, defendant Mavroules is not similarly situated with other politicians who have failed to include the value of gifts from their constituents as taxable income on their federal income tax returns.

The second category of persons that Mavroules designates as "similarly situated" consists of other state and local politicians who purportedly received use of Brest automobiles but have not been charged with violating 26 U.S.C. § 7206(1). In support of his contention that they are similarly situated, the defendant relies on copies of newspaper articles (See # 54, Exhs. G and H) wherein it was reported that Robert Brest had made various car lease or loan arrangements with other politicians.

Assuming, arguendo, that these newspaper accounts can be considered as facts,[4] the scenarios described therein are different from the one alleged in the instant indictment. For example, it was reported that State Senate Majority Leader Walter J. Boverini's campaign finance reports reflect car lease payments having been made to Brest. (See # 54, Exh. G). Moreover, the articles would appear to suggest that these other politicians did not undertake to conceal their use of the automobiles as defendant Mavroules allegedly did. In short, the newspaper articles do not demonstrate that the automobile arrangements these other politicians had with Robert Brest were identical or even comparable to the one the defendant allegedly enjoyed. Consequently, there is no factual support for the conclusion that these other state and local politicians had similar personal tax reporting obligations.[5]

---

**3.** Although Mavroules compares himself to George Bush, the very documents submitted by the defendant evidence that they are not similarly situated. There is no allegation that former President Bush's financial disclosure reports were in any manner false, fraudulent or otherwise improper.

**4.** In *Penagaricano–Soler,* the First Circuit noted that "[t]he selective prosecution claim was premised entirely on press accounts. No facts were asserted on personal knowledge or on information or belief." *United States v. Penagaricano–Soler, supra,* 911 F.2d at 838; *See also United States v. Berrios,* 501 F.2d 1207, 1210 (2 Cir.

1974) ("Although Berrios' counsel later pointed to newspaper articles as the basis for some beliefs, no evidence or facts were offered to show the basis of his belief that numerous other violations of 29 U.S.C. § 504 had gone unprosecuted.")

**5.** Absent a showing that these other politicians were under the same tax reporting obligations as Mavroules, the defendant's allegation on information and belief that these other individuals did not report the value of the automobiles as taxable income is irrelevant to the issue at hand.

In addition, to reiterate an earlier point, the federal tax charges set forth in counts ten through fifteen cannot be viewed in a vacuum. Because prosecutorial discretion may have been exercised differently if such charges stood in isolation does not mean *a fortiori* that it was impermissibly exercised when the charges are brought in conjunction with other independent, serious violations of the law.

The next category of "similarly situated" persons identified by the defendant are other members of Congress who have failed to report the receipt of gifts from constituents, but have not been indicted for violation of 18 U.S.C. §§ 1001 and 2. Relying again upon newspaper accounts (# 54, Exhs. I, K, L and M), the defendant argues that other legislators, i.e., Senators Gramm and Hatfield and Representative Daniel, engaged in far more egregious conduct, but have not been prosecuted for filing false financial disclosure reports because they are Republicans.[6] Essentially Mavroules contends that he is being treated differently on account of his political party affiliation.

The defendant has failed to produce facts to show that he has been singled out for prosecution because he is a Democrat. The government points out that a former Republican colleague of Mavroules, George V. Hansen, was prosecuted for violation of 18 U.S.C. § 1001. *See, United States v. Hansen*, 566 F.Supp. 162 (D.C.C.), *aff'd.* No. 83–1689 (D.C.Cir. August 1, 1983) (unpublished order), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) and *United States v. Hansen*, 772 F.2d 940 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986). Further, another Republican colleague, Congressman Joseph M. McDade, was indicted in May of 1992 for violations of the RICO statute and for accepting illegal gratuities. The fact that McDade was not indicted for filing false disclosure statements does not support the de-

fendant's claim of selective prosecution. As the Court in the *Hansen* case noted when the defendant in that case argued that no false statement claim was brought against another group of indicted Congressmen,

> The fact that the government did not add every conceivable offense to the [other indicted Congressmen's] indictments does not show that [they] were treated more leniently than the defendant in the instant case.

*United States v. Hansen, supra,* 566 F.Supp. at 173.

Mavroules has been charged not only with filing false Ethics in Government disclosure forms, he has been indicted on racketeering, gratuities, extortion and tax charges. Leaving the partisan politics issue aside, the defendant has not adduced facts to show that he and other members of Congress, Senator Hatfield for example, are similarly situated with respect to the duration, breadth and seriousness of their conduct.

The final category of allegedly "similarly situated" persons with whom Mavroules seeks to align himself are other politicians who have received gifts from their constituents but who have not been indicted for accepting illegal gratuities. The defendant again relies upon the newspaper articles about Senator Hatfield and Senator Gramm as well as a third regarding Republican Alabama Governor Guy Hunt. (See # 54, Exh. N).[7]

The discussion with respect to the defendant's third category is fully applicable to this final category. The bottom line is that Mavroules has failed to produce facts to show that he is similarly situated to these other politicians. For example, the defendant has proffered no facts to demonstrate that the other politicians demanded, sought and received things of value personally for and because of official acts performed, or that the other politicians took steps to conceal their receipt of such things of value.

---

**6.** The defendant concedes in his reply brief that in fact Representative Daniel was a Democrat from Virginia.

**7.** Governor Hunt is not a "public official" within the meaning of 18 U.S.C. § 201(a)(1) and, consequently, is not subject to the provisions of 18

U.S.C. § 201(c)(1)(B). Moreover, in December of 1992, Governor Hunt was indicted on a variety of state charges. The fact that Governor Hunt, to date, has not been indicted on federal tax charges does not advance the defendant's case.

To summarize, the defendant has not made a *prima facie* demonstration that he is similarly situated to the individuals in any of the four identified categories. Based on his submissions, Mavroules has not only failed to make a *prima facie* showing that he has been singled out, he has not alleged sufficient facts tending to show that he has been selectively prosecuted. Put another way, Mavroules has failed to carry his burden both with respect to the first prong of the selective prosecution test and the test for an evidentiary hearing. In the circumstances, no further issues need be addressed.

### RECOMMENDATION

For the reasons stated herein, I RECOMMEND that Defendant Nicholas Mavroules' Motion to Dismiss Counts One Through Sixteen Based on the Government's Selective Prosecution (# 54) be DENIED in its entirety.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

February 16, 1993.