U.S. v. Billmyer                       CR-94-29-JD   01/05/95
                  UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE

United States of America

        v.                        Criminal Nos. 94-29-01, 03, 04-JD

John W. Billmyer, et al.


                              O R D E R


     John W. Billmyer, Stanley James Cardiges and Dennis R.

Josleyn were indicted pursuant to a superseding indictment

("indictment").  Count I of the indictment charges Cardiges and

Josleyn with a violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962(c); Count II charges

Billmyer, Cardiges and Josleyn with conspiracy to defraud

American Honda, certain Honda dealers, the United States, the

United States Treasury and the Internal Revenue Service in

violation of 18 U.S.C. § 371; Count III charges Cardiges and

Josleyn with mail fraud in violation of 18 U.S.C. § 1341; and

Count IV charges Cardiges with witness tampering in violation of

18 U.S.C. § 1512(b)(3).  Currently before the court is defendant

Cardiges's motion to dismiss Count I of the indictment.

Discussion

Cardiges moves to dismiss Count I which alleges a violation of the RICO statute. The section of the RICO statute under which Cardiges is charged, 18 U.S.C. § 1962(c), provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Cardiges argues that the indictment is insufficient because it charges multiple conspiracies, because the predicate acts do not show the continuity and relationship required to prove a RICO violation and because the indictment does not allege the deprivation of a property right or interest as required by McNally v. United States, 483 U.S. 350, 360 (1987).[1]

An indictment is constitutionally sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge against which he must defend, and enables the defendant to plea without fear of future prosecutions for the same offense. United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993); United States v. Sedlak, 720 F.2d 715, 719 (1st Cir. 1983) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)),

---

[1]Because Count I alleges a violation of the RICO statute and not conspiracy, it is not necessary for the court to consider whether Count I is duplicitous.

cert. denied, 465 U.S. 1037 (1984); see Fed. R. Crim. P. 7(c)(1).
The defendant is entitled to a statement of facts and circumstances explaining the specific offense with which he is charged. Hamling, 418 U.S. at 117-118 (quoting United States v. Hess, 124 U.S. 483, 487 (1888)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as `those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished.'" Id. (quoting United States v. Carll, 105 U.S. 611, 612 (1882)).

Count I of the indictment reads in pertinent part:

> 30.  American Honda constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), which was engaged in, and the activities of which affected, interstate and foreign commerce.

> 31.  From in or about 1979 through in or about 1992, in the District of New Hampshire and elsewhere, **STANLEY JAMES CARDIGES, DENNIS R. JOSLEYN** and others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described in paragraph 30 of this Indictment, which was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly and willfully did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity . . . .

> 32.  The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and (5) consisted of the acts described below.

3

* * * *

41.  On or about October 5, 1990, **CARDIGES** and **JOSLEYN,** for the purpose of executing the above-described scheme to defraud, did knowingly cause American Honda employees to place in a post office and authorized depository for mail matter, to be delivered by the United States Postal Service, letters from an American Honda Zone Manager and an Assistant Zone Manager to the New Hampshire Honda dealers identified below and other dealers urging them to enroll salespersons in the sales training seminar at the Nashua Marriot in Nashua, New Hampshire, which was held on or about November 8, 1990 . . . . [i]n violation of Title 18, United States Code, Sections 1341 and 1346.

* * * *

50.  **CARDIGES, JOSLEYN** and other American Honda Employees caused Honda and Acura [Letters of Intent] to be awarded to certain individuals in return for substantial money payments, ownership interests in dealerships, ownership in real estate and other things of value . . . .

* * * *

55.  **CARDIGES** and other American Honda employees caused American Honda to approve the transfer of ownership of existing Honda and Acura dealerships to certain individuals in return for substantial money payments and an ownership interest in real estate on which a dealership was located.

* * * *

60.  **CARDIGES** and others caused American Honda to issue a Letter of First Consideration concerning a future dealership point in Puyallup, Washington to a certain individual in return for a cash payment to **CARDIGES** of approximately $250,000.

* * * *

66.  **CARDIGES** and other American Honda employees solicited, accepted and received money payments, gifts

4

and other things of value well in excess of $50.00 from Honda dealers and Acura dealers in return for favorable treatment in their business dealings with American Honda.

\* \* \* \*

73. **CARDIGES** did knowingly and corruptly attempt to persuade EDWARD A. TEMPLE, a former American Honda Zone Manager, to provide false information to the Federal Bureau of Investigation, with intent to hinder and prevent the communication to law enforcement officers of information relating to the commission or possible commission of a federal offense . . . .

In total, Count I lists forty-three racketeering acts.

The indictment sufficiently tracks the language of the RICO statute and fairly informs Cardiges of the charges against him so that he may plead an acquittal or conviction in bar of future prosecutions. Nonetheless, Cardiges argues the indictment should be dismissed, asserting that the indictment is deficient because "[i]n order to prove that RICO has been violated, `the prosecutor must show that the racketeering predicates are related, <u>and</u> that they amount to or pose a threat of continued criminal activity.'" Defendant's Memorandum in Support of Motion to Dismiss at 9 (citing <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 239 (1989)).

Whether or not the racketeering acts show or prove relatedness is not relevant to the sufficiency of the indictment. <u>See</u> <u>Boyce Motor Lines, Inc. v. United States</u>, 342 U.S. 337, 343 (1952). Cardiges's "thesis hinges on an erroneous equation of

5

what the Government must charge in the indictment with what the Government must prove at trial.  The allegations of an indictment are presumed to be true for the purposes of assessing sufficiency, and inquiry into whether the Government can prove its case is inappropriate at this stage."  United States v. Habicht, 766 F. Supp. 22, 27 (D. Mass. 1991) (citing Boyce Motor Lines, 342 U.S. at 343 & n.16).  As the government notes, it is not required to plead specifically continuity and relatedness. See United States v. Boylon, 898 F.2d 230, 250 (1st Cir.) ("Continuity is not an element of a RICO offense, stricto senso, but it is nevertheless a necessary characteristic of the evidence used to prove the existence of a pattern."), cert. denied, 498 U.S. 849 (1990); United States v. Mavroules, 819 F. Supp. 1109, 1117 (D. Mass. 1993) ("`continuity' or `relatedness' need not be alleged" in indictment).

Cardiges also argues that those acts alleged in the indictment that are subject to review under the McNally standard cannot support the indictment because no victim was deprived of any property right or interest.  Defendant's Memorandum in Support of Motion to Dismiss at 13-18.  Cardiges further contends that even those acts alleged in the indictment occurring after Congress partially overrode McNally are insufficient to uphold a RICO violation.  Id. at 13.

6

In _McNally_, the Supreme Court attempted to clarify the reach of the mail and wire fraud statutes.[2]  The indictment at issue charged that the defendants devised a scheme to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly.  The court held that the mail fraud statute does not reach "schemes to defraud citizens of their intangible rights to honest and impartial government.'"  _Carpenter v. United States_, 484 U.S. 19, 25 (1987) (quoting _McNally_, 483 U.S. at 355).  The court emphasized that the mail fraud statute is "limited in scope to the protection of property rights."  _Id._ (quoting _McNally_, 483 U.S. at 360).  Following the Supreme Court's decision in _McNally_, Congress

---

[2]The government notes that the _McNally_ holding was limited to a jury instruction that permitted the jury to convict the defendants specifically for defrauding citizens of their intangible rights to honest and impartial government." Government's Memorandum in Opposition to Defendant's Motion at 9 (citing _McNally_, 483 U.S. at 360-61).  The government implies that _McNally_ may not be relevant to a sufficiency of the indictment review. _See_ _id._  Cardiges, while recognizing that _McNally_ was concerned with post-conviction relief, argues without the benefit of legal authority that "the same reasoning holds true at this stage of the proceedings."
The court need not resolve this apparent conflict as it finds the indictment adequately alleges deprivation of property. However, the court notes that a significant number of cases have considered the sufficiency of the indictment under the _McNally_ standard.  _See, e.g._, _United States v. Doherty_, 867 F.2d 47, 55 (1st Cir. 1989); _United States v. Telink, Inc._, 702 F. Supp. 805, 807-09 (S.D. Cal. 1988), _aff'd_, 910 F.2d 590 (9th Cir. 1990). The government does not dispute Cardiges's assertion that if the underlying acts are invalid under _McNally_, then the court should find the racketeering charge defective.

7

amended the statute so that the term scheme or artifice to defraud would include "a scheme or artifice to deprive another of the intangible right of honest services." See 18 U.S.C. § 1346. However, the amendment cannot be applied retroactively and conduct alleged in an indictment said to have taken place prior to November 18, 1988, must be reviewed under the standard articulated in <u>McNally</u>. See <u>McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.</u>, 904 F.2d 786, 791 (1st Cir.), <u>cert. denied</u>, 498 U.S. 992 (1990).

The First Circuit has held that

> [a]n indictment may charge a crime by claiming that the defendant violated a statute in several different ways. See <u>United States v. Miller</u>, 471 U.S. 130, 134, 105 S. Ct. 1811, 1814, 85 L.Ed.2d 99 (1985) (indictment properly charged violations of § 1341 by setting forth "a number of ways in which the acts alleged constituted violations"). A jury need not believe that the defendant did <u>everything</u> the indictment charges; it may convict if it believes he did some of the things the indictment charges and if those things, by themselves, amount to a violation of the statute. <u>Id.</u> (conviction proper because the facts proved at trial conformed to 'one of the theories of the offense" contained in the indictment).

<u>United States v. Doherty</u>, 867 F.2d 47, 55 (1st Cir. 1989). Because "[a] part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a `useless averment' that `may be ignored,'" the fact that an indictment charges a violation of the mail fraud statute by depriving a victim of a non-property right does not

8

automatically invalidate the indictment. Id. (quoting Miller, 471 U.S. at 134; Ford v. United States, 273 U.S. 593 (1927)). Only that part of the indictment is considered invalid. Id. So long as the remaining portions of the indictment describe the offense with sufficient clarity to show a violation of law and permit the defendant to plead without fear of double jeopardy, the indictment is sufficient. Id.

The indictment at issue does not rely on any impairment of the right to honest government or any other non-property right. Instead, it charges that Cardiges devised a scheme to "defraud American Honda and Honda dealers located in New Hampshire and elsewhere, and to obtain money by false and fraudulent pretenses and representations, well knowing at the time that the pretenses and representations were false when made"; and "to defraud American Honda and American Honda dealer advertising associations." Superseding Indictment, ¶¶ 34, 42. The indictment further alleges that Cardiges and others received kickback payments in amounts totaling $100,000; defrauded dealer ad groups of approximately $2,500,000; received kickbacks in return for Letters of Intent in violation of Honda policy; converted, or stole American Honda property (contract rights); sold converted property for their own gain; and solicited and accepted money and gifts in return for valuable treatment thereby

9

defrauding Honda of its right to the salary paid to the defendants.  Id. at ¶¶ 47, 50, 56, 62, 67, 71.

Cardiges first complains that the charge in the indictment that he received payment from the recipients of dealerships awarded Letters of Intent from American Honda (Count I, Acts 9-18) is improper under McNally because American Honda no longer owned a property right or interest in awarding the dealership at the time the payments were received.  Defendant's Memorandum in Support of Motion to Dismiss at 14-15.  In support, Cardiges relies on United States v. Bruchhausen, 977 F.2d 464 (9th Cir. 1992).  In Bruchhausen, the court held that neither the government's potential forfeiture interest in high technology products smuggled into Soviet Bloc countries nor the manufacturers' interest in seeing that products they sold to the defendant were not shipped in violation of federal law constituted property or a property interest within the meaning of the wire fraud statute.  977 F.2d at 467-68.

The government responds that "American Honda had a property right in deciding to award Letters of Intent to qualified applicants based on the objective business interests of American Honda, and without any cost to the recipient of the Letter of Intent."  Government's Memorandum in Opposition to Defendant's Motion to Dismiss at 11.  The government directs the court to

10

Carpenter v. United States, 484 U.S. 19 (1987), in which the Supreme Court held that the Wall Street Journal has a property right in keeping confidential and making exclusive use of, prior to publication, the schedule and contents of its columns. The Carpenter Court noted that confidential business information has long been recognized as property. 484 U.S. at 26. The Court stated that the intangible nature of this right could not affect its determination because McNally did not limit the scope of the mail fraud statute to the protection of tangible as opposed to intangible property rights. Id. at 26-28.

The indictment before the court more closely resembles the one at issue in Bruchhausen than the one considered by the Carpenter Court in that American Honda was not deprived of its property so much as it was deprived of its right to determine the ultimate destination of the property. In Bruchhausen, the government also relied on Carpenter to support its contention that right to control the disposition of property is itself a property interest. 977 F.2d at 468. The Bruchhausen court distinguished Carpenter, noting that, unlike confidential business information, there was "no comparable understanding that a manufacturer has a property interest in the destination of its products." Id.

11

The government cites several cases holding that contract rights constitute intangible property. Government's Memorandum in Opposition to Defendant's Motion to Dismiss at 11 n.4. If the indictment charged that the defendants misappropriated the contract rights themselves, then the indictment would fall squarely under Carpenter. However, the indictment does not allege that Cardiges stole or converted the Letters of Intent. Rather, the indictment charges that Cardiges influenced American Honda's decision as to whom the Letters of Intent were to be awarded. The decision to award letters of intent cannot be considered identical to the Letters of Intent themselves. Thus, the relevant inquiry is whether the infringed interest can be considered a property right.

While this situation presents a factual scenario similar to that present in Bruchhausen, the court does not agree with the Ninth Circuit that the right claimed is too ephemeral to constitute a violation of the mail fraud statute. "In its broadest sense, a `property' interest resides in the holder of any of the elements comprising the `bundle of rights' essential to the use or disposition of tangible property or to the exercise or alienation of an intangible right." United States v. Bucuvalas, 970 F.2d 937, 945 (1st Cir. 1992) (citing Brotherton v. Cleveland, 923 F.2d 477, 481 (6th Cir. 1991) ("The concept of

12

`property' in the law is extremely broad and abstract.  The legal definition of `property' most often refers not to a particular object, but rather to the . . . bundle of rights recognized in that object . . . [including] the right to possess, to use, to exclude, to profit, and to dispose.")).

> Ownership of a tangible object . . . includes the right to retain that object and to refuse to transfer it to others.  The right persists even if others are willing to pay a fair market value for the object.  Were it otherwise, everyone would have a private right of condemnation over the property of others; everyone could simply take another's property at will as long as fair market value was paid.[3]

Bruchhausen, 977 F.2d at 469 (Fernandez, J., concurring).  "The strictures an owner puts on his willingness to sell an item are not mere ephemera."  Id.  An owner has the right to select to whom he will sell and "[f]raud may be predicated upon misrepresentations as to the identity of the purchaser."  Id. (citing Walker v. Galt, 171 F.2d 613, 614 (5th Cir. 1948)); see 37 Am. Jur. 2d Fraud and Deceit § 284 (1968) ("If one obtains from an owner, by false representation of a fact which he deems material, property that he would not otherwise have parted with . . . there is such an injury as will be redresses by equity.").  The property requirement of the mail fraud statute has been deemed satisfied where the victim lost control over property without

---

[3]This principal resonates with equal force when applied to intangible property.

13

suffering any pecuniary loss. See <u>Ranke v. United States</u>, 873 F.2d 1033, 1040 (7th Cir. 1989) (general contractor defrauded of its property because it was induced to part with property on the basis of false premise, thereby losing control over its disposition).

The indictment states that Cardiges and other American Honda employees, by accepting kickbacks in return for Letters of Intent, converted or stole the valuable contract rights conferred by the Letters of Intent; sold the converted property for their own gain and to the detriment of American Honda and its shareholders; and, in so doing, violated American Honda's conflict of interest policy. Superseding indictment at ¶¶ 51, 52. The indictment adequately alleges that American Honda was defrauded of its right to award the Letters of Intent in conformity with the "strictures" it placed on its willingness to make its awards. The "defendants' conduct deprived [American Honda] of the right to define the terms for the sale of its property . . . . The fact that [American Honda] never suffered -- and that defendants never intended it -- any pecuniary harm does not make the fraud statutes inapplicable." <u>United States v. Schwartz</u>, 924 F.2d 410, 421 (2d. Cir. 1991).

Cardiges concedes that American Honda, at least for some period of time, had a property right or interest in awarding

14

Letters of Intent and dealerships. See Defendant's Memorandum in Support of Motion to Dismiss at 14-15. However, he argues that American Honda was not defrauded its interest because the payments to the defendants were received after the dealerships were awarded and American Honda's dealings with the new dealerships were complete. This argument is nonsensical. So long as the defendant caused American Honda to award dealerships based on his personal gain, he misappropriated American Honda's property interest in awarding its valuable contract rights under the policies established by the corporation. Whether Cardiges actually received payments before or after the awards were made is immaterial.

Cardiges next argues that the same reasoning applies to his involvement in Count I, Acts 25 and 28 through 31. The fact that these acts implicated payment to Cardiges after completion of any business dealings that third parties may have had with American Honda is also irrelevant.

Finally, Cardiges complains that Acts 1 through 8, all of which occurred after Congress amended the statute, do not state a claim under RICO because "there is no evidence that American Honda would have paid less money for the services of vendors for sales training seminars or direct mail advertising and marketing services absent any kickbacks paid by the vendors to any of the

co-defendants." Defendant's Memorandum in Support of Motion to Dismiss at 17. This contention is likewise without merit. The indictment states that American Honda and Honda dealers were defrauded of funds intended to pay for the sales training seminars and that American Honda was defrauded of its right to the honest services of Cardiges and others. Superseding Indictment, ¶ 39. Since the amendment to the mail and wire fraud statutes became effective, defrauding an employer of the honest services of its employees is sufficient to sustain the mail and wire fraud charges. See McEvoy Travel Bureau, 904 F.2d at 790-93.

## Conclusion

The motion to dismiss Count I of the indictment (document no. 92) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 5, 1995

cc:  Michael J. Connolly, Esquire
     David W. Long, Esquire
     Kevin E. Sharkey, Esquire
     Stephen Lyons, Esquire
     Paul J. Twomey, Esquire
     Gregory W. Swope, Esquire
     Philip Israels, Esquire

16